**The STATE of Ohio, Appellee,**

v.

**SCHWAB, Appellant.**

[Cite as *State v. Schwab* (1997), 119 Ohio App.3d 463.]

Court of Appeals of Ohio,
Twelfth District, Butler County.

No. CA96–12–263.

Decided May 12, 1997.

*John F. Holcomb*, Butler County Prosecuting Attorney, and *Barbara Schneider*, Assistant Prosecuting Attorney, for appellee.

*Ferris & McKenna* and *Matthew C. McKenna*, for appellant.

WILLIAM W. YOUNG, Presiding Judge.

Defendant-appellant, Christopher G. Schwab, appeals his conviction of menacing by stalking in violation of R.C. 2903.211.

The following facts are undisputed. Appellant and Sydney Anne Renner ("Renner") were involved in a relationship for approximately two years. During their relationship, the parties lived together and accumulated approximately $17,000 in mutual debt on Renner's credit cards. On March 5, 1996, Renner moved out of the parties' apartment and into her parents' home in Butler County.

On March 5 and 6, 1996, appellant telephoned the Renner residence numerous times and asked to speak with Renner. Appellant's constant telephone calls resulted in the Renners' filing a police report for telephone harassment. Appellant also drove to the Renner home on March 5, 1996 where he knocked on several doors, rang the doorbell, and yelled through the door that he wanted to speak to Renner. Despite the telephone harassment complaint, appellant telephoned the Renner residence numerous times after March 6, 1996.

On March 7, 1996 appellant appeared at John Wiley's apartment in Kettering, Ohio, where Renner was present. Appellant pounded on Wiley's door, said that if he was not admitted into the apartment he would knock the door down, and said he was going to get a gun and kill himself. Wiley telephoned the Kettering Police Department and after Kettering police officers arrived, appellant left the premises. Appellant subsequently returned to Wiley's apartment complex when Renner was present on at least one other occasion between March 7, 1996 and April 1, 1996 and left a note on Renner's car.

Between March 5, 1996 and April 1, 1996, appellant sent Renner a number of unwanted letters and flowers. On March 26, 1996, appellant went to Xavier University, where Renner is a student, and attempted to obtain information regarding Renner's class schedule. Employees at Xavier refused to provide

appellant with that information, as Renner had previously filed a report with campus security requesting that the university keep her student information confidential. Campus police officers stopped appellant, questioned him, and informed him that he was no longer welcome on the Xavier campus.

On April 3, 1996, Renner signed a complaint and an affidavit charging appellant with menacing by stalking. Prior to trial, appellant filed a motion to dismiss, asserting that the menacing by stalking statute was unconstitutionally vague. The trial court overruled appellant's motion and the matter proceeded to a bench trial, which was held on April 29, 1996 and June 17, 1996. Following the close of the prosecution's case, appellant moved for a judgment of acquittal. The trial court overruled appellant's motion. On November 4, 1996 the trial court filed a journal entry finding appellant guilty of menacing by stalking and sentencing him accordingly. It is from this judgment that appellant now appeals, setting forth the following assignments of error:

Assignment of Error No. 1:

"The trial court erred by denying defendant's motion to dismiss as RC § 2903.21.1(c) is unconstitutionally vague as it pertains to 'mental distress.'"

Assignment of Error No. 2:

"The trial court erred by denying defendant's Rule 29 motion for acquittal at the close of the state's case."

Assignment of Error No. 3:

"Defendant's conviction is against the manifest weight of the evidence as no evidence was presented at trial to prove beyond a reasonable doubt that defendant knowingly caused the complaining witness mental distress of any degree."

In his first assignment of error, appellant contends that the trial court erred by overruling his motion to dismiss because Ohio's menacing-by-stalking statute, R.C. 2903.211, is unconstitutionally vague as it pertains to the definition of mental distress. Appellant argues that R.C. 2903.211 fails to give notice or fair warning of the prohibited conduct and permits arbitrary enforcement.

All legislative enactments enjoy a strong presumption of constitutionality. *State v. Anderson* (1991), 57 Ohio St.3d 168, 171, 566 N.E.2d 1224, 1226–1227. "[T]he party asserting that a statute is unconstitutional must prove this assertion beyond a reasonable doubt in order to prevail." *State v. Collier* (1991), 62 Ohio St.3d 267, 269, 581 N.E.2d 552, 553; *Anderson,* 57 Ohio St.3d at 171, 566 N.E.2d at 1226–1227. When considering a party's assertion that a statute is void for vagueness, any doubts will be resolved in favor of the statute's constitutionality. *State v. Gaines* (1990), 64 Ohio App.3d 230, 234, 580 N.E.2d 1158, 1160–1161.

 The "void for vagueness" doctrine is based upon the Fourteenth Amendment's Due Process Clause. *State v. Dario* (1995), 106 Ohio App.3d 232, 236, 665 N.E.2d 759, 761. The vagueness doctrine serves three purposes:

"[F]irst, to provide fair warning to the ordinary citizen so behavior may comport with the dictates of the statute; second, to preclude arbitrary, capricious and generally discriminatory enforcement by officials given too much authority and too few constraints; and third, to ensure that fundamental constitutionally protected freedoms are not unreasonably impinged or inhibited." *Collier,* 62 Ohio St.3d at 270, 581 N.E.2d at 554; *State v. Powell* (1993), 87 Ohio App.3d 157, 163–164, 621 N.E.2d 1328, 1331–1333.

An unconstitutionally vague statute is one that " 'either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.' " *State v. Phipps* (1979), 58 Ohio St.2d 271, 273, 12 O.O.3d 273, 274, 389 N.E.2d 1128, 1130, quoting *Connally v. Gen. Constr. Co.* (1926), 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322, 328. In addition, in order to be declared unconstitutionally vague, the statute must lack explicit standards such that it permits arbitrary and discriminatory enforcement. *Akron v. Rowland* (1993), 67 Ohio St.3d 374, 383–384, 618 N.E.2d 138, 145–147; *Collier,* 62 Ohio St.3d at 271, 581 N.E.2d at 554–555.

R.C. 2903.211 provides:

"(A) No person by engaging in a pattern of conduct shall knowingly cause another to believe that the offender will cause physical harm to the other person or cause mental distress to the other person.

"* * *

"(C)(2) 'Mental distress' means any mental illness or condition that involves some temporary substantial incapacity or mental illness or condition that would normally require psychiatric treatment."

 Appellant argues that the definition of mental distress contained in R.C. 2903.211(C)(2) is unconstitutionally vague. Appellant's argument has been addressed by the Eighth District Court of Appeals. See *State v. Fleming* (Mar. 7, 1996), Cuyahoga App. No. 68928, unreported, 1996 WL 100962; *State v. Francway* (Aug. 17, 1995), Cuyahoga App. No. 68116, unreported, 1995 WL 491104. The Eighth Appellate District analyzed the language used to define "mental distress" in the statute and determined that the language would put a person of common or ordinary intelligence on notice as to what conduct is prohibited by the statute. *Id.* The court stated:

"[A]long with the legislature, we recognize the term 'mental distress' is not a specific, easily defined ailment but rather a term which encompasses many distinguishable conditions. The fact that these conditions do not lend themselves to specific wording does not invalidate the statute. Accordingly, we find the language of the statute would put a reasonable person of ordinary intelligence, law enforcement officials and triers of fact on notice as to what conduct is prohibited."

We find this reasoning persuasive and conclude that R.C. 2903.211 is not unconstitutionally vague as it pertains to the definition of "mental distress." See *Fleming*, Cuyahoga App. No. 68928, unreported; *Francway*, Cuyahoga App. No. 68116, unreported. See, also, *Dario*, 106 Ohio App.3d at 238, 665 N.E.2d at 763 (holding that the requirement that the offender act knowingly, as found in R.C. 2903.211, negates "any claim that the statute's purported vagueness could mislead a person of ordinary intelligence into misunderstanding what is prohibited").

In addition, we find that R.C. 2903.211 is not unconstitutionally vague because it contains sufficient guidelines so as to prevent arbitrary or discriminatory enforcement. See *id.*, 106 Ohio App.3d at 239, 665 N.E.2d at 763. R.C. 2903.211 "is narrow in scope and sufficiently explicit to provide law enforcement personnel guidelines as to its proper use and does not encourage arbitrary enforcement." *Id.* Accordingly, appellant's first assignment of error is overruled.

In his second assignment of error, appellant contends that the trial court erred by overruling his Crim.R. 29 motion for acquittal at the close of the state's case. Appellant argues that his motion should have been granted because reasonable minds would find that the state had failed to prove its case beyond a reasonable doubt.

A motion for judgment of acquittal pursuant to Crim.R. 29(A) is improper "if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184, syllabus. The trial court may grant a motion for judgment of acquittal only where the evidence is insufficient to sustain a conviction. *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 23, 514 N.E.2d 394, 399–400. See, also, Crim.R. 29(A). In ruling on a motion for judgment of acquittal, "the trial court is required to construe the evidence most strongly in favor of the state, the party against whom the motion has been directed." *State v. Fyffe* (1990), 67 Ohio App.3d 608, 613, 588 N.E.2d 137, 140. See, also, *State v. Evans* (1992), 63 Ohio St.3d 231, 248, 586 N.E.2d 1042, 1056–1057.

Renner testified that on March 5, 1996, she moved out of the apartment she shared with appellant and in with her parents. Renner stated that on March

6, 1996, appellant telephoned the Renner residence and she informed him that they "were broken up" and that she did not love him or want to be with him or talk to him. Renner stated that she told appellant not to telephone the Renner residence because his constant calls were upsetting both to her and her family.

Renner stated that following her breakup with appellant, she spent the night with several friends because she wanted to keep appellant away from her parents' home and go where she felt safe. Renner testified that on March 7, 1996, appellant appeared at her friend, Wiley's, apartment when she was present and pounded on the door. Renner stated that appellant was crying and angry and said that he was going to get a gun. Renner stated that appellant left the premises after the police arrived.

Renner testified that she received unwanted flowers from appellant on March 7, 16, and 29, 1996, and that the cards attached indicated that appellant loved her and wanted her to call him. Renner stated that on March 20, 1996, she was visiting Wiley and that appellant appeared at Wiley's apartment but did not say or do anything. Renner testified that she saw appellant through the peephole in the door. Renner stated that when she left Wiley's complex, she asked someone to walk her to her car because she wanted to make sure that appellant did not follow her.

Renner testified that appellant obtained a loan in the amount of $10,000 in order to pay a portion of the parties' mutual debt. Renner testified that appellant told her that if she did not see him, "he was going to use the clause in the loan and not pay any of money" on the bills. As a result of her conversation with appellant, Renner stated that she went over to appellant's apartment and discussed their financial situation with him. Renner testified that she talked to appellant's neighbor before going to his apartment because she did not feel comfortable going to appellant's apartment alone. Renner stated that she explained to the neighbor that she had come to talk with appellant about their financial situation, that she was afraid of appellant, and asked the neighbor to call "911" if any loud voices or noises were heard. Renner testified that while she was at appellant's apartment, appellant informed her that he knew she had been parking her car in her neighbor's garage. Renner stated that appellant also admitted that he had been driving through the Renners' neighborhood in someone else's car so that he would not be noticed. Renner testified that appellant's admission made her feel "very uncomfortable and very uneasy. Frightened."

On March 23, 1996, Renner stated that she had been at Wiley's apartment and when she came out to her car, there was a note on it from appellant. Renner stated that she then paged appellant and told him that they needed to talk in order to resolve their relationship. Renner stated that she met appellant at a

park where they talked about their relationship and finances. Renner testified that she told appellant that she did not want to see him, talk to him, or be with him and to leave her alone. Renner stated that she contacted appellant on several occasions between March 6, 1996 and April 1, 1996 in order to discuss the payment of their mutual debt and explain to him that the relationship was over.

According to Renner, appellant's behavior following the termination of their relationship has completely changed her life. She does not drive places or walk in her parents' neighborhood by herself. Renner stated that she purchased a cellular phone in case appellant would "catch up" with her. Renner also testified that appellant's behavior frightened her and that because of appellant's behavior, she is afraid for herself and her parents.

After thoroughly reviewing the record, we find that the evidence presented at trial, when viewed in a light most favorable to the state, was such that reasonable minds could reach different conclusions as to whether appellant is guilty of menacing by stalking. See *Bridgeman*, 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184, at syllabus. The trial court therefore did not err in overruling appellant's Crim.R. 29 motion for judgment of acquittal at the close of the prosecution's case. Appellant's second assignment of error is overruled.

In his third assignment of error, appellant contends that his conviction for menacing by stalking is against the manifest weight of the evidence because no evidence was presented at trial to prove beyond a reasonable doubt that he knowingly caused Renner to suffer mental distress of any kind. Appellant argues that no evidence was presented regarding his mental state and the evidence that was presented failed to establish that he knowingly caused Renner to experience mental distress.

When reviewing a manifest weight claim, an appellate court is required to view the evidence in a light most favorable to the prosecution and to decide "whether any reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492, 503. See, also, *State v. Eley* (1978), 56 Ohio St.2d 169, 172, 10 O.O.3d 340, 341–342, 383 N.E.2d 132, 134–135. The judgment of the trier of fact will not be disturbed on appeal if the reviewing court determines that reasonable minds could arrive at the conclusion reached by the factfinder. *Jenks*, 61 Ohio St.3d at 273, 574 N.E.2d at 503.

R.C. 2901.22(B) provides:

"A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."

Expert testimony is not necessary to establish that a victim experienced mental distress as a result of the offender's behavior in order to prove an element of menacing by stalking. *State v. Tichon* (1995), 102 Ohio App.3d 758, 763, 658 N.E.2d 16, 19–20. Rather, it is the function of the trier of fact to determine whether a victim suffered mental distress as a result of the offender's behavior. *Id.* See, also, *State v. Manny* (May 26, 1992), Warren App. No. CA91–06–054, unreported, 1992 WL 113246.

Albert William Renner, Renner's father, testified that when Renner moved back into his home, appellant began calling the house on a constant basis. Albert Renner stated that on March 7, 1996, he filed a telephone harassment complaint against appellant because the calls were very upsetting to him and his family. Albert Renner also testified that between March 11, 1996 and April 1, 1996, appellant sent a letter to him and called him at his place of employment approximately two to five times per day, three to four days per week. Albert Renner testified that on March 17, 1996, appellant called his home and asked him to take him to the hospital and that he refused to honor appellant's request. Albert Renner testified that appellant's behavior was frightening and made him feel afraid for himself as well as his family.

Mary Anne Renner, Renner's mother, testified that appellant called her house numerous times on March 5, 1996. She stated that she did not answer the telephone but listened to the recordings of appellant's calls on her answering machine. She stated that appellant came to her house and pounded on the doors, and that she was afraid to answer the door because appellant "looked angry," and he sounded angry in his telephone messages. According to Mary Anne Renner, appellant stayed at her home for a long time, looking in the windows, banging on various doors, walking around the house, and standing in the rain.

John T. Wiley testified that he and appellant have been friends for approximately eleven years. Wiley testified that on March 7, 1996, when Sydney Anne Renner was present, appellant came to his apartment. Wiley stated that appellant began pounding on the door, yelling that he was going to kick in the door and that he was going to get a gun and kill himself. Wiley testified that he called "911" because he was afraid for the safety of appellant as well as himself. Wiley testified that on March 20, 1996, appellant came to his apartment door again, knocked, and said that he wanted to talk. Wiley stated that Renner was also present at that time. Wiley stated that appellant stood outside his apartment door for about ten minutes and then left the premises.

Appellant testified that he called Renner early on March 5, 1996, on two occasions. Appellant testified that Renner told him that they needed to talk, that she missed him, and that she would meet him at his apartment that afternoon. Appellant stated that when he arrived at his apartment that afternoon, he

realized that Renner had moved out. Appellant testified that he drove to Renner's parents' house. Appellant stated that he knocked on the door and rang the door bell, but received no response. Appellant stated that from outside the door he asked Renner if she would come out and talk to him.

On March 6, 1996, appellant testified that he called the Renner residence and spoke with Renner for approximately two hours. Appellant also stated that later that day he called the Renner home again in response to a page he had received from Renner. On March 7, 1996, appellant testified that he went to his friend Wiley's apartment to visit. Appellant stated that he knocked on Wiley's door but did not receive a response. Appellant stated that after he heard Wiley and Renner talking, he pounded on the door and told them to open the door or he would "bang it down." Appellant testified that he also told them that he was going to get a gun and kill himself. Appellant testified that the police eventually arrived and he left the premises.

On March 8, 1996, appellant testified that he received a page from Renner stating that she missed him, loved him and would call him soon. Also on March 8, 1996, appellant stated that Renner called him twice from her friend's home in Columbus and that they talked about their relationship and finances. According to appellant, Renner told him that his payment of their bills "would be a big step towards working things out."

Appellant testified that on March 17, 1996, he called the Renner residence to see if one of them would take him to the hospital. Appellant stated that Albert Renner answered the telephone and informed him that he was not to call their residence and that he should call "911." Appellant stated that on March 20, 1996, Renner called him twice and they discussed their financial situation.

Appellant testified that on March 21, 1996, Renner called him wanting to know if he had paid the bills and that they decided to meet at 4:30 at his apartment. Appellant testified that when he arrived at his apartment around 4:30, Renner was in his neighbor's apartment. Appellant stated that Renner eventually came to his apartment and stayed for approximately two and one-half hours. Appellant stated that during that time they talked, held hands and held each other.

On March 23, 1996, appellant testified that he went to see his ex-brother-in-law, who lives in the same apartment complex as Wiley. Appellant stated that he noticed Renner's car in the parking lot and that he left a note on it. Appellant stated that when he left the apartment complex he received a page from Renner. Appellant stated that he called Renner and that they went to a park where they discussed their relationship and finances. Appellant testified that Renner told him that she needed time and space.

On March 26, 1996, appellant stated that he went to Xavier in order to talk to a priest. Appellant stated that while he was at Xavier, he tried to find out if Renner was in class and the location of the class so that he could avoid her while he was on campus.

Appellant stated that during the period of time between March 5, 1996 and April 1, 1996, he sent letters and flowers to Renner and called Albert Renner at his place of employment. Furthermore, appellant testified that he was aware that Renner was seeing a counselor.

On April 1, 1996, appellant testified that he went to Wiley's apartment and that he did not know that Renner was there until he arrived. Appellant stated that he asked if Wiley and Renner would come outside to talk, but neither responded to his request. Appellant stated that after he left Wiley's apartment, he called Albert Renner at work and told him that he needed closure. Appellant testified that soon thereafter he received a page from Renner in which she threatened to call the police if he were to follow her.

Appellant stated that at no time prior to April 1, 1996, during any conversations he had with Renner, did she indicate that she did not want to talk to him or see him ever again. Appellant also testified that Renner never told him that he was frightening her or causing her mental distress. According to appellant, Renner kept opening the door for further contact with him.

After carefully reviewing the record and viewing the evidence presented at trial in a light most favorable to the prosecution, we find that reasonable minds could have found the essential elements of the crime of menacing by stalking, including knowingly and mental distress, proved beyond a reasonable doubt. See *Jenks*, 61 Ohio St.3d at 273, 574 N.E.2d at 503. See, also, *State v. Jones* (Oct. 21, 1996), Warren App. No. CA95–12–122, unreported, 1996 WL 599428. The record indicates that appellant called Renner repeatedly on the telephone, came to her parents' house where she was residing, drove by her parents' home, followed her on more than one occasion, tried to obtain information regarding her class schedule at Xavier, and sent unwanted flowers, notes, and letters to Renner, causing her to become frightened. Based upon these facts, we find that the evidence was sufficient to allow the trial court to conclude that appellant was aware that his behavior would probably cause Renner mental distress and that the elements of menacing by stalking had been proved beyond a reasonable doubt. See *Jenks*, 61 Ohio St.3d at 273, 574 N.E.2d at 503; *Tichon*, 102 Ohio App.3d at 763, 658 N.E.2d at 19–20. Accordingly, appellant's third assignment of error is overruled.

*Judgment affirmed.*

WALSH and POWELL, JJ., concur.