DECISION AND JUDGMENT ENTRY
This appeal comes to us from the Toledo Municipal Court. There, following separate jury trials, appellant was convicted of one count of menacing by stalking and two counts of violating a protective order. Because we conclude that both convictions were supported by the evidence and there were no prejudicial errors in either trial, we affirm.
Appellant, Edward Emery, and principal complainant, Debra Bennett, are feuding next door neighbors on Portsmouth Avenue in Toledo. The origins of their dispute is somewhat vague, but apparently dates to appellant's construction of a large masonry structure in his backyard which resembled a castle. While appellant apparently considered this edifice a work of art, his neighbors, including Debra Bennett, considered it a nuisance. The city of Toledo sided with the neighbors. After legal wrangling, the "castle" was dismantled and taken away.
If relations between these two neighbors had ever been cordial, they were not so following the removal of the castle. Bennett reported that appellant began referring to her as a cocaine and heroin addict, a "whore" and "prostitute." Trash was dumped in the Bennetts' front yard, a tree "toilet papered," and political signs stolen. Bennett testified at trial that in the three years prior to her complaint, she had forty-one flat tires, the result of nails or slashing. She reported damage to motion sensor security lights six times during the same period. Appellant brought numerous juvenile complaints against Bennett's teenage son and multiple lawsuits against Bennett herself. None of these actions proved meritorious.
At some point, appellant acquired a videotape camera and began to videotape Bennett, her two children, relatives, and visitors to her home. He also installed mirrors on the side of his house, which faced the Bennetts' house.
On April 18, 1998, Bennett found a note inserted into the morning newspaper on her front porch. The note read, "Pay the Piper! for your sins what rights do you've to destroy other's property work of art? Go to the zoo west end Newsboys U.T. 
Friends." The note was attached to a section of the Toledo Blade newspaper with a picture of a large sculpture being installed at the University of Toledo campus. An arrow was drawn to the picture in green ink; the same color ink used in the note.
On November 3, 1998, Debra Bennett filed a complaint accusing appellant of menacing by stalking. Concurrently, Bennett requested and was granted a temporary protective order directing appellant to refrain from, inter alia, "* * * harming, attempting to harm, threatening, molesting, following, stalking, bothering, harassing, annoying, [or] contacting * * *" Bennett or her children.
On November 11, 1998 and November 16, 1998, appellant was again videotaping Bennett and her children. Separate charges were brought, accusing appellant of violating the protective order.
The stalking offense and the protective order violations were tried separately before separate juries, resulting in appellant's conviction for menacing by stalking and for two counts of violating a protective order. On the stalking conviction, appellant was sentenced to one hundred eighty days incarceration, with all but ten days suspended and probation imposed. On the protective order violations, appellant was sentenced to one hundred eighty days incarceration for the first count and a consecutive one hundred eighty days electronic monitoring (house arrest) on the second count.
Appellant now appeals these convictions and sentences, setting forth sixteen assignments of error.[1]
 I.
In his first, fourth and seventh assignments of error, appellant challenges both the weight and sufficiency of the evidence upon which he was convicted. In Assignment of Error No. Fifteen, he indirectly challenges the sufficiency of the evidence in the context of an overruled Crim.R. 29 motion.
In a criminal context, a verdict or finding may be overturned on appeal if it is either against the manifest weight of the evidence or because there is an insufficiency of evidence. In the former, the appeals court acts as a "thirteenth juror" to determine whether the trier of fact lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered. State v. Thompkins (1997),78 Ohio St.3d 380, 387. In the latter, the court must determine whether the evidence submitted is legally sufficient to support all of the elements of the offense charged. Id. at 386-387. Specifically, whether the state has presented evidence which, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The test is, viewing the evidence in a light most favorable to the prosecution, could any rational trier of fact have found the essential elements of the crime proven beyond a reasonable doubt. Id. at 390 (Cook, J. concurring);State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. See, also, State v. Eley (1978), 56 Ohio St.2d 169;State v. Barns (1986), 25 Ohio St.3d 203.
With respect to sufficiency of the evidence in the menacing by stalking case, appellant was convicted of violating Toledo Municipal Code 523.05 which is identical to former R.C.2903.211. The ordinance provides that:
 "(A) No person by engaging in a pattern of conduct shall knowingly cause another to believe that the offender will cause physical harm to the other person or cause mental distress to the other person.
 "(B) Whoever violates this section is guilty of menacing by stalking, a misdemeanor of the first degree. If the offender previously has been convicted of or pleaded guilty to a violation of this section involving the same person who is the victim of the current offense, menacing by stalking is a felony of the fourth degree.
"(C) As used in this section:
 "(1) `Pattern of conduct' means two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents.
 "(2) `Mental distress' means any mental illness or condition that involves some temporary substantial incapacity or mental illness or condition that would normally require psychiatric treatment."
Appellant asserts that the record is devoid of any evidence that he ever directly threatened the Bennetts with physical harm or that his behavior was such that the Bennetts would have suffered mental distress to the extent that professional treatment be needed.
Direct threats of physical harm are unnecessary to establish a violation of Toledo Municipal Code 533.05/R.C.2903.11. It is sufficient that the accused exhibit a pattern of behavior with an awareness that his conduct will likely cause another to believe that the defendant will cause physical harm. See Still v. Still (Apr. 23, 1999), Montgomery App. No. 17416, unreported. Moreover, it is the function of the trier of fact to determine whether a victim has suffered mental distress as the result of a defendant's behavior. No expert testimony is required. No evidence that psychological treatment has been undertaken is necessary. State v. Tichon (1995), 102 Ohio App.3d 758,763; State v. Schwab (1997), 119 Ohio App.3d 463, 477.
In this matter, there was evidence by which a jury could have concluded that over a period of years appellant engaged in an ever escalating pattern of vandalism and harassment and that such behavior might reasonably cause the Bennetts to fear that the next step would be physical harm. Similarly, the jury could have concluded that this behavior terrorized the Bennetts sufficiently to satisfy the "mental distress" element of the ordinance. In either event, there was sufficient evidence to sustain all of the elements of the offense. Neither was the jury verdict against the manifest weight of the evidence. Accordingly, appellant's first and seventh assignments of error are not well-taken.
Appellant also complains that there was an insufficiency of evidence to sustain the jury's verdict of his protective order violation conviction. R.C. 2929.17 prohibits anyone from recklessly violating the terms of the protective order. The protective order directed appellant to abstain from, "following * * * bothering, harassing, annoying [or] contacting * * *" Debra Bennett or her children. Within a few days of the issuance of this order, the unrefuted evidence was that appellant was again videotaping the Bennett children. This occurred, even though videotaping was one of the specific behaviors that Debra Bennett complained of in the original complaint upon which the protective order was issued. On these counts, the jury could have reasonably concluded that appellant had specific notice that videotaping constituted an annoyance or harassment of the victims and, nevertheless, chose to continue this behavior. Consequently, there was neither an insufficiency of the evidence in the protective order trial, nor was the verdict against the manifest of the evidence. Accordingly, appellant's fourth assignment of error is not well-taken.
In his fifteenth assignment of error, appellant also complains that the trial court erred "* * * at various points in both trials" in denying his motions for a directed verdict. We have identified only one such motion on the record, at the close of the state's case in the protective order violation trial.
If reasonable minds can differ as to whether the state has proven each element of an offense beyond a reasonable doubt, a court must overrule a motion pursuant to Crim.R. 29. State v.Bridgeman (1978), 55 Ohio St.2d 261, syllabus. Our view coincides with that of the trial court that the state met its burden. Accordingly, appellant's fifteenth assignment of error is found not well-taken.
 II.
In Assignments of Error Nos. Three, Ten, Twelve, Thirteen, Fourteen and in his First Assignment of Error No. Nine, appellant complains of various evidentiary rulings in both trials.
The admission or exclusion of evidence at trial rests in the sound discretion of the trial court and will not be reversed absent an abuse of the discretion. State v. Morales (1987),32 Ohio St.3d 252, 257. An abuse of discretion is more than an error of law or of judgment, the term connotes that the court's attitude is arbitrary, unreasonable or unconscionable. State v. Long
(1978), 53 Ohio St.2d 91, 98.
In his third assignment of error, appellant asserts that the trial court erred in admitting the "go to the zoo" document that Debra Bennett found in her newspaper. Appellant argues Bennett was incompetent to identify the handwriting in the zoo document as his. Appellant points to the testimony of his handwriting "expert" that a layperson could not conclusively identify a handwriting sample. According to appellant, without expert testimony there was no foundation laid to introduce the document.
The "zoo" letter was admissible if for no other reason than it constituted evidence of a pattern of conduct which is an element of the offense. As to Debra Bennett's testimony that she recognized the writing on the note as appellant's, this goes to weight, not admissibility. Also admitted were unrefuted samples of appellant's writing by which the jury could compare documents and reach its own conclusion. We cannot say that the court's decision to admit the "zoo" note or Debra Bennett's testimony about it constituted an abuse of discretion. Accordingly, appellant's third assignment of error is not well-taken.
Appellant argues in his tenth assignment of error that he should have been permitted to present evidence that, following the issuance of the protective order, he was told that the court had no intention of enforcing its order that he stay one hundred feet from the Bennetts.
Appellee responds that this is a moot argument because the jury in the protective order violation case indicated that the conviction was founded on the "annoyance" prohibition, not the "100 feet" proscription.
The record does not contain the special interrogatory to which appellee refers. However, neither does it contain the ruling of which appellant complains. Absent some record of such ruling, we must presume the regularity of the proceedings. Statev. Nichols (1997), 122 Ohio App.3d 631, 634, citing Knapp v.Edwards Laboratories (1980), 61 Ohio St.2d 197, 199. Accordingly, appellant's tenth assignment of error is not well-taken.
In his twelfth assignment of error, appellant insists that in the protective order trial, the court should not have permitted Christopher Bennett to testify to appellant's pattern of behavior prior to the issuance of the protective order. Anything prior to the order is irrelevant, appellant argues.
We disagree. Although prior conduct may not form the basis of a violation of a protective order, testimony concerning a prior pattern of behavior out of which the need for a protective order arose may be contextually important in examining behavior subsequent to the order. As such, admission of the testimony of which appellant complains was within the trial court's discretion. Appellant's twelfth assignment of error is not well-taken.
Appellant's thirteenth assignment of error concerns Debra Bennett's testimony that her children felt threatened and annoyed by appellant's conduct. Appellant contends that such testimony was without personal knowledge or based on hearsay.
Even if the court's decision to admit the testimony complained of was erroneous, it was harmless. At the same trial, both Bennett children testified that they were threatened and annoyed by appellant's behavior. Moreover, given the abuse of discretion standard of review for this ruling, we cannot say that the trial court's decision was erroneous. Accordingly, appellant's thirteenth assignment of error is not well-taken.
In his fourteenth assignment of error, appellant complains that Debra Bennett should not have been permitted to testify about her flat tires because she did not actually witness appellant vandalize them.
Even had appellant objected to this testimony, it would have been admissible. Debra Bennett's testimony was that she had suffered forty-one flat tires within three years is a factual observation of which she had personal knowledge. It is circumstantial evidence of vandalism. As for Bennett's belief that appellant was responsible, again this goes to weight, not admissibility. Appellant's fourteenth assignment of error is not well-taken.
In his first Assignment of Error No. Nine, appellant, citing State v. Collett (1944), 44 Ohio Law Abs. 225, 58 N.E.2d 417, contends that the state should have restricted its proof to the information set forth in the "indictment" and the bill of particulars.
If Collett stands for anything relevant to this case, it is that an accused is entitled to sufficient notice of the offenses of which he is charged. We read nothing in the case suggesting that the state is limited by a bill of particulars with regard to the evidence it presents in support of the particulars. Accordingly, appellant's first Assignment of Error No. Nine is not well-taken.
 III.
In his Assignments of Error Nos. Two, Five, Six, and Eight, appellant contends that the charges against him and the sentence he received violate certain of his constitutional rights.
In his second assignment of error, although appellant concedes that the menacing by stalking ordinance and the temporary protective order statute are constitutional on their face, he contends that as applied to him they violate his right of free speech and privacy. In the stalking case, appellant characterizes his confrontation with the Bennetts as "riciprocal verbal altercations" which never constituted threats of a physical nature or involved physical harm. As for his videotaping of the Bennetts and their guests, appellant insists that he has an absolute right to videotape anyone, anytime, in any public place.
With respect to the violation of the temporary protective order, appellant asserts that he was only exercising his constitutional right to videotape people in public and that this right supersedes any "annoyance" factor that the Bennetts might have suffered.
Appellant chooses to focus on his activities with a video camera as innocuous and offers several examples in which society condones or even encourages videotaping in public. Appellant suggests that the camera's role in solving and preventing crime and disseminating news and information is deserving protection, but offers no authority for the absolute constitutional protection he claims for his camera use. Appellant is not a member of the press, nor has he come forward (after what, from the testimony, must have been scores of hours of taping) with evidence of any criminal activity in which the Bennetts were involved. More importantly, videotaping is only one activity in which appellant engaged that made up the pattern of behavior which the jury deemed to be stalking. Independent and unimpeached witnesses testified to observing appellant engaged in an obscenity laced screaming harangue at Debra Bennett's son in which appellant referred to the fifteen-year old's mother as a "whore or prostitute." Another witness saw appellant come on to the Bennett property to "toilet paper" a tree. If the testimony of the Bennett family is credited, encounters like these were frequent and occurred over a prolonged period of time. Also, there is the "Pay the Piper for your sins" note. Whether or not the handwriting on this note is traceable to appellant, the message, as it stands in the context of events, is sufficient to permit a reasonable trier of fact to conclude that appellant came on to Bennett's property and inserted into their newspaper a message which a reasonable person might conclude was threatening.
These facts are remarkably similar to those in State v.Tichon, supra. That case also involved a dispute between neighbors, profanity infested "hollering and screaming," and defendant's photographing of his neighbors. The trial court allowed, over objection, evidence of the defendant's incessant camera use which was directed at his victims. The Summit County Court of Appeals approved the admission of such evidence noting that such, "* * * evidence * * * can assist the jury in understanding that a defendant's otherwise innocent appearing acts, when put in the context of previous contacts he has had with the victim, may be knowing attempts to cause mental distress." Id. at 768, quoting State v. Bilder (Dec. 30, 1994), Summit App. No. 16754, unreported.
As we concluded in our discussion of appellant's fourth assignment of error, videotaping was but one part of a behavioral pattern which caused the victims to be fearful or distressed. While appellant, or any videographer, may have some liberty interest in taking pictures, such rights do not necessarily supersede an individual's right to be left alone in the privacy of his or her own home. See Cary v. Brown (1980), 447 U.S. 455, 477.
With respect to the temporary protective order violation, the order was issued on the filing of Debra Bennett's complaint against appellant. We reiterate that Debra Bennett's complaint specifically mentioned appellant's obsessive videotaping as one of the annoyances he inflicted on her family. Given this, appellant can hardly be heard to complain that he was not aware that videotaping Debra Bennett's minor children would cause annoyance. He, therefore, despite having notice, knowingly engaged in activity which he had notice would annoy the Bennetts, even though he had been specifically ordered not to annoy them. Accordingly, appellant's second assignment of error is not well-taken.
In his fifth assignment of error, appellant contends that he was denied due process because he was denied an opportunity to speak at one or both of his sentencing hearings and was denied an opportunity to be heard on bail or a stay of sentence pending appeal.
While it is true that Crim.R. 32 directs that prior to sentencing, the trial court shall address the defendant and offer him or her the opportunity to make a statement or offer information in mitigation of punishment, the failure to do so is not prejudicial error when, like here, defense counsel spoke extensively on the defendant's behalf prior to sentencing. Statev. Smelcer (1993), 89 Ohio App.3d 115, 128. Moreover, during the sentencing hearing, appellant failed to object to this omission thereby waiving error. State v. Peters (Aug. 22, 1990), Lorain App. No. 89CA004733, unreported; State v. Peagler (1996),76 Ohio St.3d 496, 499. Accordingly, appellant's fifth assignment of error is not well-taken.
In his sixth assignment of error, appellant contends that his sentences are excessive, constituting a violation of the prohibition in both the Ohio and United States Constitutions against cruel and unusual punishment.
The Eighth Amendment to the Constitution of the United States and Section 9, Article I, of the Ohio Constitution both prohibit "cruel and unusual" punishment. Violations of these provisions are rare. State v. Wetibrecht (1999), 86 Ohio St.3d 368,370-371. Violations of the provision have been found only where the sanctions imposed are, "* * * shocking to any reasonable person" or "* * * so greatly disproportionate to the offense as to shock the sense of the community." Id. quoting McDougle v.Maxwell (1964), 1 Ohio St.2d 68, 70.
Here, appellant argues the sentences he received were disproportionate for merely pointing a video camera at someone. As discussed above, videotaping is only a single act of many which the jury concluded constituted menacing by stalking. With respect to the protective order violation, appellant knew videotaping was annoying to the Bennetts and was, therefore, prohibited by the order. This was willful violation of a lawful court order and, as such, the sentence imposed was not disproportionate in any sense. Accordingly, appellant's sixth assignment of error is not well-taken.
Appellant, in his eighth assignment of error, asserts that his conviction for stalking and his conviction for violating the protective order constitute punishment for the same acts and, therefore, violate constitutional double jeopardy prohibitions. Appellant cites no authority for this assignment of error.
While it is true that both the Ohio Constitution and the United States Constitution forbid someone from being held twice accountable for the same act, the offenses of which appellant was convicted were different acts, performed at different times, in violation of different statutes. This assignment of error is not well-taken.
In his second Assignment of Error No. Nine, appellant insists that he was prejudiced in the protective order violation case when the trial court permitted the state to amend its complaint. The amendment changed the number of the statute under which the complaint was brought from "TMC 537.20" to "R.C.2919.27." Such an amendment is permissible under Crim.R. 7(D). Accordingly, appellant's second assignment of error number nine is not well-taken.
Appellant's remaining assignment of error concerns apro se motion to disqualify his trial judge in the protection order violation case. This motion was filed on April 14, 1999, and, following a hearing, denied by the presiding judge of the Lucas County Common Pleas Court on May 19, 1999. Appellant argues that during the pendency of this motion, the trial court was without jurisdiction and, as a result, the court's acceptance of the state's motion to amend and the rejection of several inlimine motions by the defendant were void.
While there is some authority to support appellant's position, see Cuyahoga Co. Bd. of Mental Retardation v.Association (1975), 47 Ohio App.2d 28 (relating to common pleas judges), we believe that the better view is expressed in Rife v.Morgan (1995), 106 Ohio App.3d 843, 849, which held that the pendency of an affidavit of prejudice does not automatically divest the trial court of power to act, even on substantive matters. The caveat to the court, however, is that if it does undertake to act on substantive matters, it risks the proceedings being held a nullity if disqualification is ordered. Id. at 850. In this matter, appellant's pro se motion to disqualify the trial judge was found not well-taken; therefore, the court's decisions and orders issued during the pendency of the motion remain undisturbed. Accordingly, appellant's eleventh assignment of error is not well-taken.
Upon consideration whereof, the judgments of the Toledo Municipal Court are affirmed. Costs to appellant.
 _____________________ Peter M. Handwork, J.
Melvin L. Resnick, J., James R. Sherck, J., Concur.
[1] Appellant has denominated these assignments of error as one through fifteen, but has then designated two of these as assignment of error "nine." See Appendix.