OPINION
This cause is an accelerated appeal from the Preble County Court of Common Pleas in which respondent-appellant, Jesse D. Walker, appeals the continuance of a civil protection order previously issued on behalf of petitioner-appellee, Teresa L. Short.
The marriage of Teresa Short and Jesse Walker was dissolved in November 1999. Following the dissolution, the parties continued to have significant contact which quickly soured. As Walker describes it, they "have come to resent one another mightily." The parties have both remarried since. On July 6, 2000, Short filed a petition on behalf of herself and her new husband for a stalking civil protection order pursuant to R.C. 2903.214. Short alleged in her petition that
 [Walker] has threatened to kill my husband. * * * I fear Jesse Walker because he has been obscessed [sic] with me. He has broken into my house. He has called my family. I have been warned by his employees about his rage towards me. He has gone to Florida to get copies of my marriage license. He has sat at [the] end of my driveway and called on cell phone to tell me who was at my house. He has entered my property and was destructive.
Following an ex parte hearing that same day, the trial court found that Walker "ha[d] threatened [Short] with bodily harm or ha[d] been convicted of or pleaded guilty to a violation of [R.C.] 2903.211 [menacing by stalking] against [Short,]" and issued a stalking civil protection order pursuant to R.C. 2903.214. During the hearing, Short reiterated her allegations regarding Walker (1) breaking into her house in October 1999, (2) calling her relatives and friends to track her down, (3) going to Florida to get copies of her marriage license and sending it to various persons, (4) calling her from the end of her driveway "wanting to know who was at [her] house and why they were there[,]" and (5) Walker's rage toward her. Short testified Walker told her twice he was going to kill her husband. Short testified that while Walker had never threatened to physically harm her, he had "punched holes in a door, coming after [her]," when they were married. Short stated that Walker "was a control freak" who was "in every bit of [her] business" and who would not leave her alone.
A full hearing was subsequently held on August 1, 2000 at which Walker and his attorney were present. By entry filed August 7, 2000, the trial court found that:
 [Walker] admits to investigating concerning the question of whether his ex-wife, [Short], had remarried. He obtained a copy of the marriage license and delivered same to [Short's] husband's ex-wife. * * *
 During the separation of the parties [Short] came home to find that someone had broken into the residence. [Short] says [Walker] admitted to her that he entered the home. [Walker] denies entering the home and denies telling [Short] that he did. * * * The Court finds that [Short's] testimony is credible and that [Walker's] is not.
 [Short] received a tip that someone may have tampered with her phone line. Investigation revealed the truth of the tip. The point of demarcation box had been opened and there was evidence that someone had tampered with the lines. [Walker] denies being involved. The box was closed and the lines were fine in late February or early March, 2000. The evidence of tampering was discovered approximately two to three weeks ago. [Walker] has the knowledge and equipment to intercept phone calls.
 The Court specifically finds that [Walker] was responsible for the tampering with [Short's] phone line and the break in at [Short's] residence.
 [Walker] appeared at [Short's] residence on a Saturday morning approximately 30 to 40 minutes prior to the pre-arranged time to pick up some property that he had stored on the premises. Some of the property had been stacked outside so [Walker] could load same without going into the barn. The atmosphere was tense, words were exchanged, the police were called, but the situation never really got out of hand. * * *
 [Walker] took his children to the dentist. The bill was sent to [Short]. [Walker] later paid the bill. He claims that the dentist simply made a mistake in using the old insurance information and address. [Walker] did not tell the dentist about the divorce.
* * *
 The evidence paints a picture of an ex-husband who professes to want nothing to do with his ex-wife, but who's [sic] actions indicate otherwise.
 After due consideration of all the evidence, the Court finds that the stalking civil protection order should continue.
This appeal follows.
In his sole assignment of error, Walker argues that the trial court erred by issuing and continuing the stalking civil protection order. Walker contends that the protection order was based upon insufficient evidence.
It is well-established that the decision whether or not to grant a civil protection order is within the sound discretion of the trial court. Woolum v. Woolum (1999), 131 Ohio App.3d 818, 821. An abuse of discretion implies that the trial court's decision was unreasonable, unconscionable, or arbitrary. Blakemore v. Blakemore (1983), 5 Ohio St.2d 217, 219. A reviewing court should follow a presumption that the trial court's findings are accurate because the trial court is in the best position to view the witnesses and observe their demeanor so as to weigh the credibility of the testimony. Seasons Coal Co. v. Cleveland
(1984), 10 Ohio St.3d 77, 80.
The stalking civil protection order was initially issued and subsequently continued pursuant to R.C. 2903.214. Such orders "are an important part of the overall legislative scheme that is designed to allow the police and the courts to act before a victim is harmed by a stalker." Lindsay v. Jackson (Sept. 8, 2000), Hamilton App. No. C-990786, 2000 Ohio App. LEXIS 4043, at *5, unreported.
R.C. 2903.214(C) provides in relevant part that
 A person may seek relief under this section for the person, or any parent or adult household member may seek relief under this section on behalf of any other family or household member by filing a petition with the court. The petition shall contain or state both of the following:
 (1) An allegation that the respondent engaged in a violation of [R.C.] 2903.211 against the person to be protected by the protection order, including a description of the nature and extent of the violation;
(2) A request for relief * * *.
R.C. 2903.211(A), in turn, provides that "[n]o person by engaging in a pattern of conduct shall knowingly cause another to believe that the offender will cause physical harm to the other person or cause mental distress to the other person." R.C. 2903.211(A) thus requires proof that the offender knowingly caused mental distress to another or that the offender knowingly caused another to believe that the offender would cause physical harm to him or her. R.C. 2903.211(A)(1) defines a pattern of conduct as "two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents." R.C. 2903.211(C)(2) defines mental distress as "any mental illness or condition that involves some temporary substantial incapacity or mental illness or condition that would normally require psychiatric treatment."
Explicit or direct threats of physical harm are not necessary to establish a violation of R.C. 2903.211(A). The test is not whether the offender's conduct was threatening but whether the offender by engaging in a pattern of conduct knowingly caused another to believe the offender would cause physical harm to him or her. State v. Jones (Oct. 21, 1996), Warren App. No. CA95-12-122, unreported, at 14. Similarly, expert testimony is not necessary to establish that a victim experienced mental distress as a result of the offender's behavior in order to prove an element of menacing by stalking. State v. Shwab (1997),119 Ohio App.3d 463, 472. Rather, it is the function of the trier of fact to determine whether a victim suffered mental distress as a result of the offender's behavior. Id.
Upon thoroughly reviewing the record, we find that the trial court properly issued and continued the stalking civil protection order. The record clearly shows that Walker knowingly engaged in a pattern of conduct meant to harass Short, his former wife. The record also shows that Walker twice threatened to kill Short's husband. In light of Walker's threats regarding Short's husband and Walker's actions as alleged in Short's petition, and because the initial protection order covered both Short and her husband, we find it was properly issued.
When continuing the protection order, the trial court did not make any new findings regarding the physical harm prong of R.C. 2903.211. Rather, the court listed a number of actions allegedly perpetrated by Walker and ordered that the protection order be continued. Unlike during the exparte hearing, neither Short nor her husband testified at the full hearing about threats of physical harm made by Walker. Nevertheless, we find that the protection order was properly continued.
While there is no new evidence of threats of physical harm, there is past evidence of Walker's threats to kill Short's husband. The protection order was initially issued to protect Short and her husband. Because there was no new petition filed between the ex parte and full hearings, the protection order continued to protect Short and her husband following the full hearing. In addition to the past threats, there was evidence at the full hearing that, despite the initial issuance of the protection order, Walker had continued to engage in actions directed at Short, to wit, tampering with Short's phone lines. While Walker denied being involved, the trial court found that Walker had the knowledge and equipment to intercept phone calls and was the person responsible for tampering with Short's phone lines. Issues of credibility are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
Based upon the facts of this case and given the remedial goal of the statute, we find that the trial court could reasonably have inferred that Short and her husband were afraid Walker would cause physical harm to one or both of them. See Lindsay, Hamilton App. No. C-990786, unreported. We therefore hold that based upon Walker's past threats of physical harm, coupled with his continued harassing behavior and his apparent inability or unwillingness to leave Short alone, the trial court could reasonably have found that Walker knowingly caused Short and her husband to fear that Walker would physically harm one or both of them. See Lain v.Ververis (Oct. 18, 1999), Preble App. No. CA99-02-003, unreported. The trial court did not err by issuing and continuing the stalking civil protection order. Walker's assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and VALEN, J., concur.