THE STATE OF OHIO, APPELLANT, *v.* PHIPPS, APPELLEE.

(No. 78-554—Decided June 6, 1979.)

*Mr. Thomas A. Luebbers*, city solicitor, *Mr. Paul J. Gorman* and *Ms. Dolores Jechura Hildebrandt*, for appellant.

*Mr. Douglass L. Custis*, for appellee.

LOCHER, J. The state presents two propositions of law concerning the First and Fourteenth Amendments to the United States Constitution for consideration in this cause. In part *I, infra*, the state argues that R. C. 2907.07-(B) does not violate the Due Process Clause; that is to say, the state maintains that the statute is not void for vagueness, and, therefore provides adequate notice of what is proscribed. In part *II, infra*, the state contends that R. C. 2907.07(B) is not overbroad in violation of the Freedom of Speech Clause.

*I.*

The Court of Appeals found R. C. 2907.07(B) to be vague because the solicitation is not a crime unless the other person finds it offensive. The wording of the statute, the court found, denies the defendant notice of what is proscribed, because the criminal nature of the solicitation depends upon the subjective reaction of the person solicited.

We disagree with the appellate court and hold that R. C. 2907.07(B) is not void for vagueness. While the United

States Supreme Court has not always made a clear distinction between the doctrines of overbreadth and vagueness, we believe the proper standard for determining if a statute is vague is found in *Connally* v. *General Construction Co.* (1926), 269 U. S. 385, and *Grayned* v. *Rockford* (1972), 408 U. S. 104. In *Connally* v. *General Construction Co.*, the Supreme Court stated, at page 391, that a vague statute is one "which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." See *Zwickler* v. *Koota* (1967), 389 U. S. 241, 249; *Cameron* v. *Johnson* (1968), 390 U. S. 611, 616; *Colten* v. *Kentucky* (1972), 407 U. S. 104, 110-111; *Broadrick* v. *Oklahoma* (1973), 413 U. S. 601, 607. In *Grayned* v. *Rockford*, the Supreme Court distinguished the vagueness and overbreadth doctrines, pointing out that it is a basic principle of due process that "an enactment is void for vagueness if its prohibitions are not clearly defined," whereas "[a] clear and precise enactment may nevertheless be 'overbroad' if in its reach it prohibits constitutionally protected conduct." *Id.*, at pages 108 and 114.

We find R. C. 2907.07(B) to be neither so vague that men of common intelligence must necessarily guess at its meaning, nor unclearly or imprecisely written. The statute meets the constitutional requirement that a person of ordinary intelligence be given a reasonable opportunity to know what is prohibited and to act accordingly. R. C. 2907.-07(B) states:

"No person shall solicit a person of the same sex to engage in *sexual activity* with the offender, when the offender *knows* such solicitation is *offensive* to the other person, or is *reckless* in that regard." (Emphasis added.)

The operative words of the statute are "sexual activity," "knows," "offensive" and "reckless." The phrase "sexual activity" and the word "knows" are clearly defined in the Revised Code.

The phrase "sexual activity" is defined in R. C. 2907.-01(C) as "sexual conduct or sexual contact, or both." R. C. 2907.01(A) defines "sexual conduct" as "vaginal inter-

course between a male and female and anal intercourse, fellatio, and cunnilingus between persons regardless of sex. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R. C. 2907.01(B) defines "sexual contact" as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if such person is a female, a breast, for the purpose of sexually arousing or gratifying either person."

The word "knows" is precisely defined in R. C. 1301.-01(Y), which states, in part:

"A person 'knows' or has knowledge of * * * [a] fact when he has actual knowledge of it. 'Discover' or 'learn' or a word or phrase of similar import refers to knowledge rather than to reason to know. * * *"

Similarly, the words "offensive" and "reckless," while not specifically defined in the Revised Code (see R. C. 2901.22(C)), are words commonly understood by men of common intelligence. Webster's Third New International Dictionary defines the word "offensive" as that which is disagreeable or nauseating or painful because of outrage to taste and sensibilities or affronting insultingness," and that which "calls forth a determination to resist, rebel * * *." Also, "reckless" is defined as "lacking in caution" or "irresponsible, wild." Black's Law Dictionary (Rev. 4 Ed.) defines "reckless" as "careless, heedless, inattentive; indifferent to consequences."

With these definitions in mind, it is difficult to conceive of a more clearly and precisely written statute. If a defendant has actual knowledge that the solicitation will be outrageous to the taste and sensibilities of the person solicited, which may cause that person to resist, or the defendant acts heedlessly and indifferently to the consequences, then he has violated R. C. 2907.07(B).

The example given by Presiding Judge Palmer, in dissenting to the appellate court's majority opinion, is instructive with regard to reckless solicitation. He stated:

"* * * If an individual stands outside a church on Sunday morning and solicits sexual activity from each per-

son exiting from the portals, he may not 'know' that the solicitations are offensive to these strangers, but he is certainly acting with heedless indifference to the consequences by perversely disregarding a known risk that such solicitations will be offensive."

*II.*

The defendant-appellee successfully asserted in the Court of Appeals that R. C. 2907.07(B) is overbroad in that it could conceivably be applied unconstitutionally to others in situations not then before the court. Standing in First Amendment cases to challenge the constitutionality of statutes in such a manner is an exception to traditional standing doctrine and is designed to insulate all individuals from the "chilling effect" that overbroad statutes have upon the exercise of our First Amendment freedoms. *Freedman* v. *Maryland* (1965), 380 U. S. 51, 56-57; *Dombrowski* v. *Pfister* (1965), 380 U. S. 479, 486-487. The consequences of such a departure from traditional rules of standing in the First Amendment area is that any enforcement of a statute challenged on the ground of overbreadth is totally forbidden until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression. *Broadrick* v. *Oklahoma, supra* (413 U. S. 601), at page 613. Specifically, if this court finds the statute to be overbroad, it may not be applied to the appellee herein until a satisfactorily limiting construction is placed on the legislation. *Gooding* v. *Wilson* (1972), 405 U. S. 518, 521-522.

Our inquiry here, therefore, is to determine if R. C. 2907.07(B) is susceptible to application to speech protected by the First Amendment. If we find that it is, we must then determine if the statute is capable of being authoritatively construed so as to apply only to unprotected speech.

The state argues that R. C. 2907.07(B) does not attempt to regulate speech at all but, rather, regulates only solicitation, whether it be by speech, writings, or gestures that make it manifest to the person offended. Such sexual solicitation, the state contends, constitutes verbalized con-

duct, not verbalized ideas protected by the First Amendment.

In its brief, the state relies on *District of Columbia* v. *Garcia* (D. C. App. 1975), 335 A. 2d 217, and *United States* v. *Moses* (D. C. App. 1975), 339 A. 2d 46. These cases are not helpful in that they are distinguishable from the facts in this cause. *District of Columbia* v. *Garcia* dealt with solicitation to engage in sexual activity which was unlawful. Here, however, the act solicited was not unlawful.[1] *United States* v. *Moses* dealt with a statute which proscribed solicitation for prostituton. While prostitution *per se* was not unlawful, the court found, at pages 52-53, that, because the solicitation dealt with a straightforward business proposal, which may be regulated under the standards applicable to "purely commercial advertising," the statute did not prohibit protected speech. Since this cause does not involve commercial speech and because, in any event, the Supreme Court has substantially dismantled the "commercial speech" exception in *Bigelow* v. *Virginia* (1975), 421 U. S. 809, and *Virginia State Board of Pharmacy* v. *Virginia Citizens Consumer Council, Inc.* (1976), 425 U. S. 748, we find this case particularly inappropriate.

We find it impossible to separate conduct from speech in this instance. It must, therefore, be determined if R. C. 2907.07(B), on its face, proscribes protected or unprotected speech, or both. There are categories of speech which are said to be unprotected *per se*. These categories are: (1) libel (*Beauharnais* v. *Illinois* [1952], 343 U. S. 250); (2) calculated falsehoods (*Time, Inc.*, v. *Hill* [1967], 385 U. S. 374); (3) obscenity in "works" (*Miller* v. *California* [1973], 413 U. S. 15); and (4) "fighting" words (*Chaplinsky* v. *New Hampshire* [1942], 315 U. S. 568; *Cincinnati* v. *Karlan* [1974], 39 Ohio St. 2d 107; and *State* v. *Hoffman* [1979], 57 Ohio St. 2d 129).

There is another category of speech that is protected by the First Amendment, but can nevertheless be regulated if there is a compelling reason for doing so. *Herndon* v.

---

[1]In Ohio, effective January 1, 1974, the General Assembly repealed the sodomy statute, R. C. 2905.44.

*Lowry* (1937), 301 U. S. 242, 258; *Shelton* v. *Tucker* (1960), 364 U. S. 479, 488; *Grayned* v. *Rockford, supra* (408 U. S. 104), at pages 116-117. Such restriction of the right of free speech is justified when the statute prohibits a substantial evil that rises far above public inconvenience, annoyance and unrest. See, *e. g.*, *Terminiello* v. *Chicago* (1949), 337 U. S. 1, 4; *American Communications Assn.* v. *Douds* (1950), 339 U. S. 382.

In addressing this latter category, we must examine the state's interest in enacting R. C. 2907.07(B) to determine if it is significantly compelling to justify a restriction of speech. One of the obvious purposes of the enactment of R. C. 2907.07(B) is to protect the privacy of citizens; *i. e.*, the statute is designed to shield our citizens from language which is personally offensive and violates what has been called "the most comprehensive of rights and the right most valued by civilized men"—the right to be let alone.[2]

It is beyond cavil that this is a legitimate exercise of the police power, the exercise of which is justified by the interest of the state in achieving a workable degree of social organization and harmony. Those who would have this court believe that the average citizen would not find homosexual solicitations of the nature proscribed in R. C. 2907.-07(B) to be injuriously offensive are guilty of murky thinking. The type of expression proscribed in the statute may have been acceptable in a more barbarous age when human dignity had not reached the level expected by citizens in our modern society.

Even the furtherance of such an important state interest, however, is not sufficiently compelling when the statute infringes on otherwise protected speech. The expression of ideas or emotions cannot be prohibited, on this basis alone, to protect unwilling hearers without "a showing that substantial privacy interests are being invaded in an essentially intolerable manner." *Cohen* v. *California* (1971),

---

[2] See *Olmstead* v. *United States* (1928), 277 U. S. 438, 478, where Justice Brandeis, in his time-honored dissent, first judicially identified the basic right of privacy.

403 U. S. 15, 21. *Cf. Rowan* v. *Post Office Dept.* (1970), 397 U. S. 728. Here, since "the special plight of the captive auditor" is not involved, the Constitution requires those who are displeased by such solicitations, without more, to "avoid further bombardment of their sensibilities simply by averting their eyes." *Cohen* v. *California,* at pages 21-22. *Cf. Pub. Util. Comm.* v. *Pollak* (1952), 343 U. S. 451, 469; *Lehman* v. *Shaker Heights* (1974), 418 U. S. 298, 305 (Douglas, J., concurring). Therefore, we hold that, even though important privacy interests of citizens are involved, the solicitor's constitutional right to free speech is paramount, absent a showing that his speech is otherwise unprotected.

Therefore, unless R. C. 2907.07(B), on its face, proscribes only unprotected speed *per se* or can be narrowly construed to do so, the statute must be struck down as being unconstitutionally overbroad. We find that, while the statute, on its face, sweeps too broadly, it can be narrowly construed to proscribe only the "fighting" words category of unprotected speech. "Fighting" words are those "which by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Chaplinsky* v. *New Hampshire, supra* (315 U. S. 568), at page 572. See *Cantwell* v. *Connecticut* (1940), 310 U. S. 296, 310; *Terminiello* v. *Chicago, supra* (337 U. S. 1), at page 3; *Cohen* v. *California, supra,* at page 20; *Gooding* v. *Wilson, supra* (405 U. S. 518); *Lewis* v. *New Orleans* (1974), 415 U. S. 130; *Cincinnati* v. *Karlan, supra* (39 Ohio St. 2d 107); and *State v. Hoffman, supra* (57 Ohio St. 2d 129.)

When a person "knows" that the person solicited will be offended, or the person does so "reckless[ly]" and heedlessly without regard to the consequences, such solicitations are likely to provoke the *average* person to retaliation and thereby cause a breach of the peace. See *Street* v. *New York* (1969), 394 U. S. 576, 592; *Bachellar* v. *Maryland* (1970), 397 U. S. 564. Stated differently, solicitations of the type proscribed by the statute are, as a matter of common knowledge. often likely to provoke violent reaction. *Cohen* v. *California, supra,* at page 20.

Indeed, according to the Technical Committee's report, this is what was contemplated when the statute was enacted. The Committee Comment, in addressing division (B) of R. C. 2907.07, states:

" * * * The ratonale for prohibiting indiscreet solicitation of deviate conduct is that the solicitation in itself can be highly repugnant to the person solicited, and *there is a risk that it may provoke a violent response.*" (Emphasis added.)

Furthermore, Justice Powell of the United States Supreme Court, in dissenting to an order to vacate and remand *Rosenfeld* v. *New Jersey*, No. 71-1044, for consideration in light of *Cohen* v. *California, supra,* intimated, at 408 U. S. 901, 905, that the definition of "fighting" words may be read broadly enough to cover the speech proscribed by the statute, stating:

" * * * [T]he exception to First Amendment protection recognized in *Chaplinsky* is not limited to words whose mere utterance entails a high probability of an outbreak of physical violence. *It also extends to the willful use of scurrilous language calculated to offend the sensibilities of an unwilling audience.*" (Emphasis added.)

See *Williams* v. *District of Columbia* (1969), 136 U. S. App. D. C. 56, 64, 419 F. 2d 638, 646.

Harkening back to the condemnation in *Chaplinsky* of words "which by their very utterance inflict injury * * *" (315 U. S., at page 572), Justice Powell contended, at page 906 (408 U. S.), that "a verbal assault on an unwilling audience may be so grossly offensive and emotionally disturbing as to be the proper subject of criminal proscription * * *." Justice Powell felt that such language should be treated as a public nuisance whether or not it constitutes "fighting" words.

Similarly, we feel that solicitations of the type proscribed by the statute are often "grossly offensive and emotionally disturbing." They are very likely to cause injury in a very real, if only emotional, sense. Many times the shock to one's sensibilities and the sense of affront, resulting in injury to one's mind and spirit, are as

great from such speech as from a physical assault.

Therefore, we hold that a person may be punished under R. C. 2907.07(B) if the solicitation, by its very utterance, inflicts injury or is likely to provoke the average person to an immediate breach of the peace.

The judgment of the Court of Appeals is reversed, and the cause is remanded to the Municipal Court for a new trial in order to have the criminality of appellee's speech specifically determined, pursuant to the narrowing construction contained herein.

*Judgment reversed and cause remanded.*

CELEBREZZE, C. J., HERBERT, W. BROWN, P. BROWN and HOLMES, JJ., concur.

SWEENEY, J., dissenting. While I agree with the majority's analysis that R. C. 2907.07(B) is facially overbroad, I must dissent from their attempt to "authoritatively construe" the statute so as to save it from a First Amendment attack. By simply adding the catch-phrase, "unless the solicitation, by its very utterance, inflicts injury or is likely to provoke the average person to an immediate retaliatory breach of the peace," the majority opinion attempts to limit the application of R. C. 2907.07 (B) to the "fighting words" exception to protected speech. However, this attempt seriously blurs the long-standing distinction between fighting words and merely offensive speech.

The United States Supreme Court has distinguished between speech which, though vulgar or offensive, is protected, and unprotected fighting words, on the basis that the latter is limited to "those personally abusive epithets which, when addressed to the ordinary citizen are, as a matter of common knowledge, inherently likely to provoke violent reaction." *Cohen* v. *California* (1971), 403 U. S. 15, 20. This court recognized the distinction when we stated in *Cincinnati* v. *Karlan* (1974), 39 Ohio St. 2d

107, 110: "[N]o matter how rude, abusive, offensive, derisive, vulgar, insulting, crude, profane or opprobrious spoken words may seem to be, their utterance may not be made a crime unless they are fighting words, as defined by * * * [the United States Supreme Court]." Yet, this crucial distinction disappears when the majority declares that, "[w]hen a person 'knows' that the person solicited will be *offended,* or the person does so 'reckless[ly]' and heedlessly without regard to the consequences, such solicitations are likely to provoke the *average* person to retaliation and thereby cause a breach of the peace." (Emphasis partially added.) Thus, this court now seems willing to equate offensive speech with fighting words. To this writer the majority's stance appears as a dangerous narrowing of First Amendment freedoms.

The majority is using the concept of "authoritative construction" as a vehicle for salvaging constitutionally deficient legislation. Here, they have not so much construed, as they have contorted the meaning of R. C. 2907.-07(B). To equate a deviant sexual proposal, no matter how crude or tasteless, with a "personally abusive epithet" exceeds the limits of rational statutory interpretation.

In conclusion, I cannot join in the majority's freewheeling use of the concept of "authoritative construction" to re-draft this facially unconstitutional statute. I believe that the privacy interests the majority seeks so strenuously to safeguard are adequately protected by R. C. 2917.11 which we recently construed in *State* v. *Hoffman* (1979), 57 Ohio St. 2d 129.

Accordingly, I would affirm the judgment of the Court of Appeals on the basis that R. C. 2907.07(B) is an unconstitutional infringement upon freedom of speech.