**CITY OF CLEVELAND, Appellee,**

v.

**MAISTROS, Appellant.**

[Cite as *Cleveland v. Maistros* (2001), 145 Ohio App.3d 346.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 79007.

Decided Sept. 24, 2001.

*Lauren Moore,* Chief Prosecutor, and *Christopher R. Fortunato,* Assistant City Prosecutor, for appellee.

*Kenneth J. Rexford* and *Legal Aid Society,* for appellant.

COLLEEN CONWAY COONEY, Judge.

Defendant-appellant Joseph Maistros appeals his conviction in the Cleveland Municipal Court for importuning, in violation of R.C. 2907.07(B). Maistros asserts that the trial court erred in denying his motion to dismiss because R.C. 2907.07(B) violates the Equal Protection Clause of the United States Constitution. For the reasons below, we reverse Maistros's conviction and vacate his sentence.

On November 8, 1999, Maistros, a student at Cleveland State University ("CSU"), sexually propositioned another male student, while the student was in a restroom stall using the toilet. Maistros first peeked under the stall and, using vulgarity, asked the student to perform a sexual act with him. The student attempted to cover himself, and Maistros then peeked over the stall and again propositioned the student. After a third time, Maistros left the restroom.

The student exited the restroom and told two friends about the incident. The three men searched for Maistros and a chase ensued across campus. While chasing Maistros, the student called the police on his cell phone, and Maistros was eventually arrested.

Maistros was issued a misdemeanor citation charging him with importuning, in violation of R.C. 2907.07(B), a first degree misdemeanor.

On October 31, 2000, Maistros filed a motion to dismiss the charge, arguing that R.C. 2907.07(B) is unconstitutional because it violates the Fourteenth Amendment to the United States Constitution. The matter proceeded to a bench trial prior to the court's ruling on the motion to dismiss. After hearing the testimony, the trial court overruled the motion to dismiss and found Maistros guilty of the charge of importuning.

On November 21, 2000, Maistros was sentenced to a one-hundred-eighty-day jail term and a $150 fine. Both the jail term and the fine were suspended on the condition that he comply with one year of active probation, with the requirements that he receive no new cases and stay off CSU property.

Maistros raises the following assignment of error:

"Notwithstanding apparent Supreme Court and Eighth District precedent to the contrary, the trial court should have granted defendant Maistros's motion to dismiss the one count of importuning, as R.C. 2907.07(B) is facially unconstitutional, as violating equal protection."

In his sole assignment of error, Maistros argues that the trial court erred in overruling his motion to dismiss because R.C. 2907.07(B) violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Specifically, Maistros asserts that R.C. 2907.07(B) burdens homosexuals with criminal liability for conduct that is lawful if committed by heterosexuals.

Before we can reach the merits of Maistros's argument, a review of the cases which have previously addressed the equal protection issue raised herein is necessary.

## History of the Issue

The Ohio Supreme Court has never directly upheld R.C. 2907.07(B) on equal protection grounds. It has, however, upheld the statute on due process grounds. *State v. Phipps* (1979), 58 Ohio St.2d 271, 12 O.O.3d 273, 389 N.E.2d 1128.

In 1979, the Ohio Supreme Court reversed a Hamilton County Court of Appeals decision that found R.C. 2907.07(B) violative of equal protection but did so without opinion, citing *State v. Phipps*. *State v. Faulk* (June 6, 1979), Ohio Supreme Court No. 78–1443, unreported.[1]

This court, citing *Faulk II*, has also upheld R.C. 2907.07(B). *State v. Lasher* (Jan. 14, 1999), Cuyahoga App. No. 73085, unreported, 1999 WL 13971.

Recently, the Ohio Supreme Court decided to revisit the constitutionality of R.C. 2907.07(B) in *State v. Thompson*, which involves equal protection challenges. See *State v. Thompson* (Dec. 22, 2000), Ashtabula App. No. 99–A–0070, unreported, 2000 WL 1876610, discretionary appeal allowed (2001), 91 Ohio St.3d 1528, 747 N.E.2d 252.

To best understand our conclusion that the issue is open and ripe for consideration, it is necessary to review the aforementioned cases.

In substance, the first court to actually decide the equal protection issue raised by R.C. 2907.07(B) was the Hamilton County Court of Appeals in *State v. Faulk* (Sept. 13, 1978), Hamilton App. No. C–77486, unreported, 1978 Ohio App. LEXIS 8288.[2] The Hamilton appellate court determined in *Faulk I* that R.C. 2907.07(B)

---

**1.** Hereinafter referred to as *Faulk II*.

**2.** Hereinafter referred to as *Faulk I*.

is unconstitutional because there is no rational basis for burdening only homosexuals with criminal liability for offensive solicitations. *Id.* at * 14. In its analysis, the appeals court set forth two possible state interests to justify R.C. 2907.07(B): the promotion of the heterosexual family unit and the protection of citizens from offensive conduct which may incite violence. *Faulk I* at * 9. It discounted the first reason by finding that because consensual adult homosexual relationships are legal, the statute does not set forth a consistently maintained governmental interest against the inception of homosexual relationships. *Id.* In evaluating the second state interest, the appeals court noted that offensive heterosexual advances are just as likely as homosexual solicitations to violate the public peace and dignity, which the statute assertedly is designed to protect. *Id.* at * 11. Thus, it determined that there was no rational basis for making this conduct illegal when the offender and victim are of the same sex but legal when they are of opposite sexes. *Id.*

On appeal, the Ohio Supreme Court reversed *Faulk I* without opinion on the authority of *State v. Phipps* (1979), 58 Ohio St.2d 271, 12 O.O.3d 273, 389 N.E.2d 1128. *Faulk II, supra.*

In *Phipps,* the Ohio Supreme Court held that R.C. 2907.07(B) is not void for vagueness or overly broad, and therefore does not violate the Due Process Clause of the Fourteenth Amendment or the Freedom of Speech Clause of the First Amendment. *State v. Phipps* at syllabus. The court did not address the equal protection argument.

After *Faulk II,* this court addressed the equal protection issue raised by R.C. 2907.07(B) in *State v. Lasher. Lasher* noted that the defendant presented "well-reasoned and persuasive arguments addressing the viability of R.C. 2907.07(B) in light of the right to equal protection guaranteed by the U.S. and Ohio Constitutions." *Lasher,* 1999 WL 13971, at * 4. However, *Lasher* ultimately overruled the defendant's equal protection argument. *Id.* at * 13. *Lasher* held that we were required to follow the *Faulk II* decision because we are "bound by and must follow decisions of the Ohio Supreme Court." *Id.* at * 5, citing *Victoria Mtge. Corp. v. Williams* (Apr. 25, 1996), Cuyahoga App. No. 68012, unreported, 1996 WL 200160, quoting *Thacker v. Bd. of Trustees of Ohio State Univ.* (1971), 31 Ohio App.2d 17, 60 O.O.2d 65, 285 N.E.2d 380.

The Ohio Supreme Court dismissed the appeal of *Lasher,* finding that no substantial constitutional question was raised. *State v. Lasher* (1999), 85 Ohio St.3d 1476, 709 N.E.2d 849.

The Eleventh District Court of Appeals in *Thompson* also upheld R.C. 2907.07(B) as constitutional but urged the Ohio Supreme Court to address the result of *Faulk II.* The Ohio Supreme Court has allowed a discretionary appeal of *Thompson. State v. Thompson* (2001), 91 Ohio St.3d 1528, 747 N.E.2d 252.

Both *Lasher* and *Thompson* found that they were bound by the Supreme Court's decision in *Faulk II*. However, both courts noted that *Faulk II* was decided on the authority of *Phipps* despite the fact that *Phipps* was not determined on equal protection grounds.

However, although *Phipps* was analyzed under different rules of law, the court's premise for upholding the constitutionality of R.C. 2907.07(B) was that the statute promoted the important governmental interest of "achieving a workable degree of social organization and harmony." *State v. Phipps*, 58 Ohio St.2d at 276, 12 O.O.3d 273, 389 N.E.2d 1128. Thus, the crux of the analysis in both *Faulk I* and *Phipps* was the determination of a legitimate governmental interest justifying R.C. 2907.07(B). The appellate court in *Faulk I* determined that the governmental interest for which R.C. 2907.07(B) was purportedly enacted is incompletely served by the statute, since similar offensive conduct is not prohibited when it is heterosexual in nature. *Faulk I*, 1978 Ohio App. LEXIS 8288, at * 12. In contrast, in upholding the constitutionality of R.C. 2907.07(B), the Ohio Supreme Court in *Phipps* essentially determined that the governmental interest of "social organization and harmony" was fully served by the statute. See *State v. Phipps*. And although *Phipps* did not specifically distinguish offensive heterosexual solicitations from offensive homosexual solicitations, the court did note that "the average citizen would * * * find *homosexual* solicitations of the nature proscribed in R.C. 2907.07(B) to be injuriously offensive * * *." (Emphasis added.) *Id.* at 277, 12 O.O.3d 273, 389 N.E.2d 1128. Both *Phipps* and the appellate decision in *Faulk I* raised the same state interest but interpreted it differently. *Phipps* saw the need to protect citizens from offensive *homosexual* solicitations, whereas *Faulk I* saw the need to protect citizens from *all* offensive solicitations.

Therefore, presumably, when the Ohio Supreme Court reversed *Faulk I* on the authority of *Phipps*, it was reversing the *Faulk I* court's determination that heterosexual solicitations are no less offensive than homosexual solicitations, and the appellate court's finding that R.C. 2907.07(B) did not fully serve a legitimate governmental interest.

By reversing *Faulk I* on this distinction, but not addressing the constitutional issue, the Ohio Supreme Court decided *Faulk II* without creating a rule of law regarding the equal protection argument raised by R.C. 2907.07(B).

As recently stated by Justice Cook in *Baughman v. State Farm Mut. Auto. Ins. Co.* (2000), 88 Ohio St.3d 480, 492, 727 N.E.2d 1265 (Cook, J., concurring), the Ohio Supreme Court "sits to settle the law, not to settle cases." However, in the *Faulk II* decision, the court opted to settle the case without settling the law. The *Faulk II* decision has resulted in over twenty years of confusion for trial courts, which have attempted to resolve the equal protection issues raised by R.C.

2907.07(B). See *Lasher, Thompson,* and *State v. Perrin* (1991), 62 Ohio Misc.2d 51, 589 N.E.2d 497.

### Does *Faulk II* Set Forth a Controlling Rule of Law?

The Ohio Supreme Court's decision in *Faulk II* does not appear in the Ohio Official Reports. As an unreported Ohio Supreme Court decision, *Faulk II* is an anomaly because pursuant to Rule 1(A) of the Ohio Supreme Court Rules for Reporting Opinions, "All opinions of the Supreme Court shall be reported in the Ohio Official Reports."

However, *Faulk II* is a *decision,* not an opinion, and therefore is not required to be reported pursuant to Rule 1(A) of the Ohio Supreme Court Rules for Reporting Opinions. Also, because *Faulk II* does not contain a syllabus and is not a *per curiam* opinion, it does not set forth a controlling point of law pursuant to Rule 1(B) and (C) of the Ohio Supreme Court Rules for Reporting Opinions.[3]

Further, as stated in *Bumiller v. Walker* (1917), 95 Ohio St. 344, 351, 116 N.E. 797:

"Ordinarily [the Ohio Supreme] court does not regard its unreported cases as judicial authority, for the reason that it is generally impossible to ascertain the concrete legal propositions involved and decided * * *."

As noted by the Franklin County Court of Appeals in *State v. George* (1975), 50 Ohio App.2d 297, 307, 4 O.O.3d 259, 362 N.E.2d 1223:

"[T]he requirement that opinions be officially reported before they receive judicial recognition has [a] valid basis. It is fundamental that if a decision is cited as authority and precedent such should be readily obtainable by all parties and by the court."

Here, the Ohio Supreme Court's decision in *Faulk II* is unreported, and not readily attainable.[4] Further, no rule of law was pronounced by the Ohio Supreme

---

**3.** Rule 1(B) provides: "The syllabus of a Supreme Court opinion states the controlling point or points of law decided in and necessarily arising from the facts of the specific case before the Court for adjudication."

Rule 1(C) states: "In a *per curiam* opinion of the Supreme Court, the point or points of law decided in the case are contained within the text of each *per curiam* opinion and are those necessarily arising from the facts of the specific case before the Court for adjudication."

**4.** *Faulk II* does not appear in the Ohio Official Reports, nor any other reporter. Nor was this court able to obtain the decision from an on-line source. The only publication in which the decision is noted is the June 11, 1979 Ohio State Bar Association Report obtained from the Ohio Supreme Court Library. After special order and a wait of several days, we were able to obtain a copy of the journal entry from the Supreme Court Clerk.

Court in *Faulk II*. Thus, we determine that we are not bound by *Faulk II* regarding the equal protection argument raised by Maistros.[5]

Notwithstanding our determination that *Faulk II* is not controlling, we recognize that, until a proper reason for change is advanced, the doctrine of precedents requires us to temper our own inclinations as to the law and apply legal precedents where applicable, whether the law to be applied is officially published or not. *State v. George*, 50 Ohio App.2d at 310, 4 O.O.3d 259, 362 N.E.2d 1223. We find that proper reasons exist to justify a divergence from the *Faulk II* decision.

We will decide the equal protection issue for the reasons stated below. First, the Supreme Court has allowed the appeal of *Thompson*, which further supports our position that the *Faulk II* decision did not dispositively decide the equal protection argument raised herein.

Second, Maistros has not sought a stay in the court below; thus, this matter could become moot if not determined prior to the expiration of his sentence. Further, Maistros was a student at CSU at the time of the incident. A condition of his sentence requires that he stay off CSU property. As a result, he is unable to continue his education at CSU if he desires to do so.

Last, the changes over the past twenty years of society's views of homosexuals require us to revisit the equal protection challenges to R.C. 2907.07(B).

As previously stated, *Faulk II* was determined on the authority of *Phipps*, an opinion that stated that the average citizen would find homosexual solicitations to be injuriously offensive, and opined that "[t]he type of expression proscribed [by R.C. 2907.07(B) ] may have been acceptable in a more barbarous age when human dignity had not reached the level expected by citizens in our modern society." *State v. Phipps*, 58 Ohio St.2d at 277, 12 O.O.3d 273, 389 N.E.2d 1128.

Clearly, the "expression proscribed" by R.C. 2907.07(B) is homosexual in nature. The Committee Comment, in addressing division (B) of R.C. 2907.07, specifically states:

"The solicitation of *homosexual* or *lesbian* activity is \* \* \* prohibited, when the solicitor knows or has reasonable cause to believe the solicitation is offensive to the person solicited."

Thus, the *Faulk II* decision was premised on the questionable belief that the government had a greater interest in protecting its citizenry from unwanted

---

**5.** We are mindful that our determination differs from *Lasher;* however, we are not bound by the unreported *Lasher* decision. See Rule 2(G)(2) of the Supreme Court Rules for the Reporting of Opinions. Further, this court did not fully address the equal protection issue in *Lasher.*

offensive homosexual advances than from heterosexual solicitations, and that this greater protection was necessary to promote societal order and harmony.

However, the governmental interest of "societal organization and harmony," used to justify R.C. 2907.07(B), is clearly an interest subject to differing interpretations. It is the type of interest driven by community standards. At the time that R.C. 2907.07(B) was enacted, the community standards with regard to homosexuality were quite different than they are today. Our society has grown more tolerant of those with alternative lifestyles; thus, the governmental interest being protected has evolved.

Because of societal changes, R.C. 2907.07(B) upholds an outdated governmental interest of protecting its citizens from homosexual solicitations. Not only does this statute continue to promote a questionable state interest, it has a collateral effect of telling victims of unwanted heterosexual solicitations that the importance of the crimes committed against them depends on their gender.[6]

As stated by Justice Cardozo:

"Jurisprudence has never been able in the long run to resist successfully a social or economic need that was strong and just." Cardozo, The Growth of the Law (1924), at 117–118.

 Applying this principle to the issue at hand, it is clear that the *Faulk II* decision serves only as an obstacle to the natural development of the law. In determining that we are not required to follow the Ohio Supreme Court's decision in *Faulk*, "we are not unmindful of the doctrine of *stare decisis* which dictates adherence to judicial decisions." *Clark v. Southview Hosp. & Family Health Ctr.* (1994), 68 Ohio St.3d 435, 438, 628 N.E.2d 46. However, as the Ohio Supreme Court stated in *Clark:*

"*Stare decisis* * * * was not intended 'to effect a "petrifying rigidity," but to assure the justice that flows from certainty and stability. If, instead, adherence to precedent offers not justice but unfairness, not certainty but doubt and confusion, it loses its right to survive, and no principle constrains us to follow it.' *Bing v. Thunig* (1957), 2 N.Y.2d 656, 667, 163 N.Y.S.2d 3, 11, 143 N.E.2d 3, 9." *Id.*

In addition to promoting unfair results, adherence to *Faulk II* has caused doubt and confusion among trial courts grappling with the equal protection issues raised by R.C. 2907.07(B). Thus, we determine that the persistent application of *Faulk II* to this issue would result in petrifying rigidity.

---

6. The collateral impact of R.C. 2907.07(B) on victims is discussed more fully *infra.*

Therefore, we find that it is imperative to address the equal protection challenge ignored by *Faulk II*, and further find that we must decide the issues before us in an expedient manner, rather than await the decision in *Thompson.*

Therefore, because *Faulk II* is not dispositive but only serves as persuasive authority on the equal protection issues raised by Maistros, and because this court has not fully addressed these issues and did not do so in *Lasher*, we will determine the equal protection issue at hand.

### Equal Protection Issue

R.C. 2907.07(B) provides:

"No person shall solicit a person of the same sex to engage in sexual activity with the offender, when the offender knows such solicitation is offensive to the other person, or is reckless in that regard."

Maistros maintains that the R.C. 2907.07(B) burdens homosexuals with criminal liability for conduct that is lawful if committed by heterosexuals. He adopts this argument from the holding in the court of appeals decision in *Faulk I*, which was subsequently cited in *Perrin.* The court in *Perrin* noted:

"Obviously only a person soliciting someone of 'the same sex' can be guilty of violating this section. There is no provision prohibiting the solicitation of someone of the opposite sex (unless for money) anywhere in the code." 62 Ohio Misc.2d 51, 52, 589 N.E.2d 497.

However, although no other provision specifically prohibits heterosexual solicitations, R.C. 2917.11 (disorderly conduct statute) prohibits the same conduct proscribed by R.C. 2907.07(B), without discrimination. See *Phipps*, 58 Ohio St.2d at 281, 12 O.O.3d 273, 389 N.E.2d 1128 (A. William Sweeney, J., dissenting).

R.C. 2917.11 provides:

"(A) No person shall recklessly cause inconvenience, annoyance, or alarm to another by doing any of the following:

"* * *

"(2) Making unreasonable noise or an offensively coarse utterance, gesture, or display or communicating unwarranted and grossly abusive language to any person;

"(3) Insulting, taunting, or challenging another, under circumstances in which that conduct is likely to provoke a violent response;

"* * *

"(5) Creating a condition that is physically offensive to persons or that presents a risk of physical harm to persons or property, by any act that serves no lawful and reasonable purpose of the offender.

"\* \* \*

"(E)(1) Whoever violates this section is guilty of disorderly conduct.

"(2) Except as otherwise provided in division (E)(3) of this section, disorderly conduct is a minor misdemeanor."

What is troubling is that although both R.C. 2907.07(B) and 2917.11 prohibit the same type of offensive conduct, the penalty for violating these statutes is quite different. Violation of R.C. 2917.11 is a minor misdemeanor, subject to a maximum $100 fine. See R.C. 2929.21(D). In comparison, R.C. 2907.07(B) is a first degree misdemeanor, subject to a maximum penalty of six months in jail and a $1,000 fine. See R.C. 2929.21(B)(1) and (C)(1).

Equally disturbing is the impact that these disproportionate punishments have on the victims of these offenses.

When considering the "fighting words" requirement that it added to R.C. 2907.07(B), the Supreme Court in *Phipps* emphasized the impact that offensive and unwanted solicitations have on a victim by stating:

"[W]e feel that solicitations of the type proscribed by the statute are often 'grossly offensive and emotionally disturbing.' They are very likely to cause injury in a very real, if only emotional, sense. Many times the shock to one's sensibilities and the sense of affront, resulting in injury to one's mind and spirit, are as great from such speech as from a physical assault." 58 Ohio St.2d at 280–281, 12 O.O.3d 273, 389 N.E.2d 1128.

Although the court was referring to the acts proscribed by R.C. 2907.07(B), in comparison, a female victim subjected to Maistros's conduct while in an isolated restroom also would feel emotionally disturbed by the incident. And, no doubt, it would be "a shock to her sensibilities" if she had been using the restroom when Maistros peered under the stall and propositioned her. Nonetheless, had Maistros exhibited the same behavior towards a female, his maximum punishment would be a $100 fine.

If the legislature's concern in enacting R.C. 2907.07(B), and the court's concern in upholding the statute is truly the rights of the victim, then there is no justification for creating a double standard when punishing offenders, whose conduct is identical, merely because of the gender of the victim.

Equal Protection Analysis

The Fourteenth Amendment to the United States Constitution provides that "[n]o State shall * * * deny to any person within its jurisdiction the equal protection of the laws." Section 2, Article I of the Ohio Constitution provides that "[a]ll political power is inherent in the people. Government is instituted for their equal protection and benefit * * *."

■ "In determining whether a statute is unconstitutional because it violates the right to equal protection, we first must examine the class distinction drawn to decide if a suspect class or a fundamental right is involved." *Roseman v. Firemen & Policemen's Death Benefit Fund* (1993), 66 Ohio St.3d 443, 447, 613 N.E.2d 574; *State ex rel. Vana v. Maple Hts. City Council* (1990), 54 Ohio St.3d 91, 92, 561 N.E.2d 909, 911; *Primes v. Tyler* (1975), 43 Ohio St.2d 195, 198–199, 72 O.O.2d 112, 114, 331 N.E.2d 723, 726.

■ Homosexuals are not a suspect class, see *Equality Found. of Greater Cincinnati, Inc. v. Cincinnati* (C.A.6, 1995), 54 F.3d 261; and, therefore, Maistros's equal protection argument regarding R.C. 2907.07(B) must be analyzed under the rational basis test. See *Roseman*, 66 Ohio St.3d at 447, 613 N.E.2d 574; *Granzow v. Montgomery Cty. Bur. of Support* (1990), 54 Ohio St.3d 35, 37, 560 N.E.2d 1307, 1309; *Gaines v. Preterm–Cleveland, Inc.* (1987), 33 Ohio St.3d 54, 58, 514 N.E.2d 709, 714; *Thompson*; *State v. Perrin*, 62 Ohio Misc.2d at 53, 589 N.E.2d 497. In order to pass scrutiny under the rational basis test, the classification must bear a rational relationship to a legitimate governmental interest or reasonable grounds must exist for drawing the distinction. *Holeton v. Crouse Cartage Co.* (2001), 92 Ohio St.3d 115, 131, 748 N.E.2d 1111; *State v. Williams* (2000), 88 Ohio St.3d 513, 530, 728 N.E.2d 342. Under this test, a statute must be "reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." *Lasher*, citing *F.S. Royster Guano Co. v. Virginia* (1920), 253 U.S. 412, 415, 40 S.Ct. 560, 64 L.Ed. 989.

■ The state interest purportedly achieved by R.C. 2907.07(B) is the protection of the public from offensive conduct that may provoke physical violence. In enacting this statute, the state created a distinction between homosexuals and heterosexuals. "[T]he Equal Protection Clause [requires] that, in defining a class subject to legislation, the distinctions that are drawn have 'some relevance to the purpose for which the classification is made.'" *Rinaldi v. Yeager* (1966), 384 U.S. 305, 309, 86 S.Ct. 1497, 1499, 16 L.Ed.2d 577, 580.

■ There is no doubt that heterosexual solicitation may be equally repugnant, offensive, and just as likely to incite violence as homosexual solicitation. *Thompson*; see *State v. Perrin*, 62 Ohio Misc.2d at 53, 589 N.E.2d 497. Thus, there is

simply no rational basis for burdening homosexuals with greater criminal liability for conduct which, if heterosexual in nature, would be subject to lesser punishment. See *id.*

Thus, we agree with the appellate court in *Faulk I* in concluding that the classification created by R.C. 2907.07(B) is not reasonably or rationally related to the accomplishment of the proposed government interest. *Faulk I,* 1978 Ohio App. LEXIS 8288, at * 12; see, also, *Perrin; Thompson.* As a result, R.C. 2907.07(B) violates the equal protection guarantees under the United States and Ohio Constitutions.

### Conclusion

Society has changed. There is no reason why the "average" citizen should be more likely to respond violently because the solicitation is homosexual in nature rather than heterosexual.

*Faulk II* was decided from a dated point of view that the creation of a separate discriminatory statute was necessary to promote the state's interest in maintaining harmony. The antiquated view that offensive homosexual solicitations are worse than offensive heterosexual solicitations no longer exists in today's society.

Additionally, the law's view regarding the needs of victims has also changed. In the instant matter, we are faced with a law that creates an incongruent standard—judging one crime to be more offensive than the other, not based on the act done, but against whom the act is committed. To tell one victim that his aggressor will potentially receive six months in jail, and tell another victim, who has been equally violated by the same act, that her aggressor will receive a maximum penalty of $100 creates an unjustifiable, unequal protection of victims.

As stated above, *Faulk II* does not set forth a controlling point of law, and the persuasiveness of its dated viewpoint has been diminished by the changing views of society. "Certainly, it is clear that protecting the public from offensive conduct, which may invoke a violent response, is a legitimate and objective state interest." *Thompson.* However, R.C. 2917.11, the disorderly conduct statute, exists to protect citizens from such conduct, without the discriminatory effect of R.C. 2907.07(B). Accordingly, there is no rational basis for R.C. 2907.07(B) because this legitimate state interest is already protected. As such, we find that R.C. 2907.07(B) violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Accordingly, we reverse Maistros's conviction and vacate his sentence.

*Judgment reversed*
*and sentence vacated.*

PATRICIA ANN BLACKMON, P.J., and FRANK D. CELEBREZZE, JR., J., concur.