[Cite as *State v. Rollison*, 2017-Ohio-8936.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                    CASE NO. 9-17-17

    v.

RYAN RITCHIE ROLLISON,             O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Marion County Common Pleas Court
Trial Court No. 2016 CR 0558

Judgment Affirmed

Date of Decision: December 11, 2017

APPEARANCES:

    *Nathan D. Witkin* for Appellant

    *Kevin P. Collins* for Appellee

**ZIMMERMAN, J.**

{**¶1**} Defendant-appellant, Ryan Ritchie Rollison ("Rollison") appeals the April 21, 2017 judgment of the Marion County Common Pleas Court sentencing him to twenty-four (24) months in prison after he was found guilty of Having Weapons While Under Disability in violation of R.C. 2923.13(A)(2), a felony of the third degree.

### *Facts and Procedural History*

{**¶2**} On October 11, 2016, Rollison was indicted on one count of Having Weapons While Under Disability, in violation of R.C. 2929.13(A)(2), a felony of the third degree. (Doc. 2). His charge stems from the allegation that on October 11, 2016, at approximately 5:30 in the morning, Rollison brandished a shotgun at Frankie Newsome ("Newsome").

{**¶3**} Rollison pled not guilty to the charge and a jury trial was scheduled. Prior to trial, the parties stipulated that Rollison had a prior conviction for Burglary, an offense of violence. (Doc. 25).

{**¶4**} On January 5, 2017 the case proceeded to a jury trial. At trial, the State called five (5) witnesses: Demerrill Knaul, the 9-1-1 operator; Frankie Newsome, the victim; and officers Daniel Ice ("Officer Ice"), Robert Musser ("Officer Musser") and Detective Joshua Harris ("Detective Harris"), all with the Marion City Police Department. Rollison did not offer witnesses or present a defense at trial.

{¶5} The jury found Rollison guilty of Having Weapons While Under Disability and the case was scheduled for sentencing. Ultimately, the trial court sentenced Rollison to a prison term of 24 months, journalized by its judgment entry of April 21, 2017. It is from this judgment that Rollison appeals asserting the following assignments of error for our review.

### *Assignment of Error No. I*

**APPELLANT'S TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL.**

### *Assignment of Error No. II*

**THE JURY'S DECISION TO CONVICT THE APPELLANT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

### *First Assignment of Error*

{¶6} In his first assignment of error, Rollison argues that he received ineffective assistance of counsel. Specifically, he argues that his attorney failed to challenge two (2) jurors for cause, failed to object to key pieces of evidence, and failed to request discovery prior to trial.

### *Standard of Review*

{¶7} To establish a claim for ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that counsel's deficient performance prejudiced him. *State v. Phillips*, 3d Dist. Allen No. 1-15-43, 2016-Ohio-3105, ¶11, citing *State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, ¶133,

citing, *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The failure to make either showing defeats a claim of ineffective assistance of counsel. *State v. Bradley*, 42 Ohio St.3d 136, 143 (1989), quoting *Strickland* at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.").

*Analysis*

{¶8} Rollison's first argument is that trial counsel was ineffective for failing to seek the removal of juror Zucker ("Zucker") and juror Thomas ("Thomas") for cause during jury selection. During voir dire, Zucker stated that he knew Marion police officer Ice, a witness for the prosecution, and that his ability to be fair and impartial *could* be affected due to this association. (Tr. 28). However, Zucker stated that he would be able to listen to the witness's testimony, evaluate their credibility and follow the judge's instructions. (Tr. 28-29). When questioned by the trial court, Zucker stated that since he knows a lot of law enforcement officers his views may be "colored" one way or the other, but that he would be able to put that aside. (Tr. 48-49). Although Rollison's counsel did not challenge Zucker for cause, Zucker was ultimately released by the court for cause. Thus, Rollison's trial counsel did not have to expend a peremptory challenge to remove Zucker as a juror.

{¶9} Juror Thomas stated that his sister was the victim of an armed bank robbery, which caused her the loss of her job and a divorce. Thomas stated that for these reasons, he may not be able to judge the case fairly for the defense. (Tr. 51). Nevertheless, when the court questioned Rollison's counsel regarding Thomas, counsel advised (the court) that he was worried about juror Thomas, especially given the fact that Rollison's prior offense was for Burglary. (Tr. 55-56). The court then released Thomas for cause, eliminating the need for Rollison's counsel to exercise a peremptory challenge to remove Thomas.

{¶10} In this case, we must decide whether defense counsel's failure to challenge Zucker and Thomas for cause resulted in a deficient performance and whether such deficiency affected the outcome of the trial. Our review of the record reveals that juror Zucker was ambiguous as to whether or not he could remain neutral in regards to evaluating the testimony of a prosecution's witness, which resulted in the trial judge removing him from the jury panel. Although defense counsel didn't specifically request that Zucker be released, counsel did state he was "a little bit concerned about Mr. Zucker" (Tr. 55), which ultimately resulted in Zucker being released by the court. And, when discussing the issues regarding juror Thomas with the trial judge, Rollison's defense counsel stated "I'm worried about Mr. Thomas too. * * * [E]specially given the fact that my client's prior is a B and

E". (Tr. 55-56). Juror Thomas, like juror Zucker, was then released as a potential juror by the court.

{¶11} It is clear to us that Rollison's counsel successfully influenced the trial judge to remove these two potential jurors *for cause*. Thus, Rollison's counsel was free to exercise his limited peremptory challenges on other veniremen. There is nothing deficient in Rollison's counsel's performance and in our review, Rollison's argument is without merit.

{¶12} Next, Rollison argues that his defense counsel failed to object to the testimony of Officer Ice at trial. Rollison contends that counsel should have objected to Officer Ice's testimony as being nonresponsive hearsay.

{¶13} A review of the record reveals that prior to Officer Ice testifying, the prosecutor played Newsome's 9-1-1 call to the jury. Newsome testified that what he told the dispatcher in his 9-1-1 call (Rollison brandishing a shotgun) was the truth. (Tr. 103). Thereafter, Officer Ice testified as follows regarding Newsome's statement:

> **PROSECUTOR:** What did you do upon your arrival at - -
>
> **OFFICER ICE:** I went and spoke to Mr. Newsome. He advised me that Ryan had come to his house. I'll back up a little bit. He told me that Ryan was at his house earlier, that he had fed him. He was with some female at the time. He didn't know who she was. They left a short time ago, that Ryan had come back to the house. He kicked or beat on the door. He

> **opened the door for Ryan. Ryan pointed a gun at him, said something about some money. I don't exactly - - the exact words that were said.**
>
> **He said he slammed the door. He said then he heard Ryan say something along the lines of "If you open the door, I'll give you this gun" or "a gun" or "some gun". * * ***

(Tr. 128).

{¶14} Defense counsel didn't object to this testimony or to statements made by Newsome through Officer Ice's body camera. However, we find that defense counsel used these statements made by Newsome (to Officer Ice) as a way to impeach Newsome's credibility. The Ohio Supreme Court has stated "the failure to make objections is not alone enough to sustain a claim of ineffective assistance of counsel. *State v. Kruse*, 3d Dist. Union No. 14-16-15, 2017-Ohio-5667, ¶35, citing *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶103; *State v. Holloway*, 38 Ohio St.3d 239, 244 (1988) (citations omitted). Trial counsel is permitted to make strategic decisions regarding the use of objections. Strategic trial decisions, even if unsuccessful, generally do not constitute ineffective assistance of counsel. *State v. Carter*, 72 Ohio St.3d 545, 558 (1995). Thus, we find Rollison's counsel made a strategic decision in order to attack the credibility of a key prosecution witness.[1]

---

[1] Even if Rollison's counsel would have objected, the statements of Newsome through Officer Ice may have been admissible under Evidence Rule 801(D) since Newsome (the declarant of the statements) was subjected to cross examination at trial. Nevertheless, Rollison's counsel's trial strategy to impeach Newsome's credibility was not deficient representation.

{¶15} Finally, Rollison claims ineffective assistance of counsel because defense counsel did not request discovery prior to trial. However, "the decision to submit a request for discovery 'is presumed to be a trial tactic which does not constitute ineffective assistance of counsel.'" *State v. Whittsette*, 8th Dist. Cuyahoga No. 85478, 2005-Ohio-4824, ¶35. In the case *sub judice*, defense counsel did not file a request for discovery. However, a review of the record shows that despite the lack of making a request, discovery was ordered by the trial court and had been provided and exchanged to Rollison's counsel. (Doc. 10). Furthermore, counsel for the State acknowledged that discovery continued to be exchanged up to the day before the trial. (Tr. 176-177). Thus, we find that Rollison was provided discovery and has failed to convince us how the failure of his counsel (to request discovery) has resulted in actual prejudice, since discovery was ordered and provided.

{¶16} Accordingly, Rollison's first assignment of error is overruled.

*Second Assignment of Error*

{¶17} In Rollison's second assignment of error, he claims that his conviction for Having Weapons While Under Disability is against the manifest weight of the evidence. Specifically, Rollison argues that the testimony of Newsome was unreliable and that the responding officers never actually saw him holding or touching the gun in question. We disagree.

*Standard of Review*

**{¶18}** When determining whether a conviction is against the manifest weight of the evidence, we "will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt". *State v. Eskridge*, 38 Ohio St.3d 56 (1988), at paragraph two of syllabus.

**{¶19}** In reviewing whether the trial court's judgment was against the weight of the evidence, the appellate court sits as the "thirteenth juror" and examines the conflicting testimony. *State v. Thompkins*, 78 Ohio St.3d 380, 387. In taking on this role, this court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in reviewing the evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *Id.* In making this analysis, we must be mindful that determinations of credibility and weight of the testimony remain within the jurisdiction of the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, paragraph one of the syllabus.

**{¶20}** When applying the manifest weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction', should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶9, quoting *State v. Hunter*, 131 Ohio St.3d 67,

2011-Ohio-6524, ¶119. "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.'" (Emphasis omitted.) *Thompkins*, quoting Black's Law Dictionary 1594 (6th Ed.1990).

{¶21} Furthermore, "[t]o reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required. *Thompkins* at paragraph 4 of the syllabus, citing Ohio Constitution, Article IV, Section 3(B)(3).

*Analysis*

{¶22} In this case, the jury was able to see and hear the testimony of Newsome, which included his inability to recall all aspects of the incident (with Rollison) in question. However, Newsome authenticated his 9-1-1 call and testified that what he told the 9-1-1 operator was truthful. Further, Newsome was subject to cross examination by Rollison's defense counsel on this point and while Rollison argues that Newsome was not credible, the jury chose to believe him. The jurors

were free to believe the testimony offered by the State's witnesses. *State v. Bates*, 12th Dist. Butler No. CA2009-06-174, 2010-Ohio-1723, ¶11, quoting *State v. Bromagen*, 12th Dist. Clermont No. CA2005-09-087, 2006-Ohio-4429, ¶38 ("It is well-established that '[w]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the jury believed the prosecution testimony.'").

{¶23} Moreover, in this case the State did not have to prove that Rollison was brandishing, holding or touching the gun, only that he *possessed* it. The trial judge, in his jury instructions, defined the charge of Having Weapons While Under Disability and explained to the jury what the State must prove for a finding of guilt. The court informed the jury "[b]efore you can find the defendant guilty of Having Weapons While Under Disability, you must find beyond a reasonable doubt * * *, the defendant knowingly acquired, had, carried or used a firearm and the defendant had previously been convicted of burglary". The court then went on to explain the definition of 'knowingly' and 'had possession' as follows:

> "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or he is aware that his conduct will probably be of a certain nature.
>
> * * *
>
> 'Had' means possessed. * * * A person has possession when he knows that he has the object on or about his person or property or place where it is accessible to the use or direction and he has the ability to control it exclusive of others. Ownership is not necessary. * * *"

-11-

(Tr. 78-79).

**{¶24}** During the trial, the jury was presented with Newsome's 9-1-1 call and heard testimony from Demerrill Knaul, communications coordinator at Marion central dispatch, who authenticated the 9-1-1 call. Knaul testified that in Newsome's 9-1-1 call, Newsome identified himself and stated Rollison had been at his house with a gun.

**{¶25}** Further, Officer Ice testified that when he arrived at Newsome's residence, Newsome advised him that Rollison had knocked on Newsome's front door and, when he opened it, Rollison pointed a gun at him. (Tr. 128). And Officer Musser testified that *while* responding to the 9-1-1 call, he observed Rollison on his front porch, which is not far from Newsome's residence, and after he placed Rollison into custody, Officer Musser secured the porch area and located a Winchester single shot .20-gauge shotgun next to the chair where Rollison was seated. (Tr. 148-149, 153). Officer Musser further testified that the shotgun was "within grab reach" of where Rollison was sitting and that the shotgun was loaded. (Tr. 149-150).

**{¶26}** Furthermore, due to the stipulation of the parties, the jury was advised by the court of Rollison's prior Burglary conviction which placed him under the legal disability to possess a firearm.

{¶27} Therefore, based on the record before us and the testimony presented, we cannot find that the jury clearly lost its way and created a manifest miscarriage of justice as competent and credible evidence exists in the record to support Rollison's conviction for Having Weapons While Under Disability.

{¶28} Accordingly, Rollison's second assignment of error is overruled.

{¶29} Having found no error prejudicial to the appellant herein in the particular assignments of error, we affirm the judgment of the trial court.

*Judgment Affirmed*

**PRESTON, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**