[Cite as *State v. Winters*, 2022-Ohio-2061.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 29157 |
| | : | |
| v. | : | Trial Court Case No. CRB 2100049 |
| | : | |
| AALIYAH WINTERS | : | (Criminal Appeal from |
| | : | Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 17th day of June, 2022.

. . . . . . . . . . .

ERIK R. BLAINE, Atty. Reg. No. 0080726, Assistant Prosecuting Attorney, City of Vandalia Prosecutor's Office, 245 James E. Bohanan Drive, Vandalia, Ohio 45377
        Attorney for Plaintiff-Appellee

JAMES S. SWEENEY, Atty. Reg. No. 0086402, 285 South Liberty Street, Powell, Ohio 43065
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

LEWIS, J.

{¶ 1} Defendant-Appellant Aaliyah Winters appeals from her conviction for disorderly conduct, a misdemeanor of the fourth degree, in the Vandalia Municipal Court following a bench trial. Winters alleges that her conviction was not supported by sufficient evidence and was against the manifest weight of the evidence. Further, Winters claims that her attorney was ineffective for failing to file a request for discovery. For the reasons outlined below, we modify her conviction to disorderly conduct, a minor misdemeanor, vacate the imposition of the 30-day suspended jail sentence, and affirm the trial court's judgment in all other respects.

## I.  Facts and Procedural History

{¶ 2} Winters was charged by complaint with one count of disorderly conduct, in violation of R.C. 2917.11(A)(3). The case proceeded to a bench trial during which the following evidence was presented.

{¶ 3} Winters testified that on the evening of January 6, 2021, she went to a Dollar Tree store with her two-year-old daughter to buy a pop. When Winters entered the store, she was on the phone and was told by an employee to hurry up, because the store was going to close in four minutes. Winters observed it was 8:34 p.m. and asked the employee what time the store closed. The employee indicated the store closed at 9 p.m.

{¶ 4} Winters told the person she was on the phone with that she hated when employees try to close the stores early just because they want to get home. Apparently having overheard Winters' comment, the employee responded to Winters. While initially

Winters ignored the employee's comments, she eventually exchanged words with the employee. At some point, the employee told Winters she would call the police. Winters decided to stay inside the store and wait for the police to arrive.

{¶ 5} Deputy Tori Bargo of the Montgomery County Sheriff's Office testified that she responded to a dispatch regarding a disorderly subject refusing to leave the store and arguing with employees. When she arrived, Bargo spoke with the employee of the store, who indicated that the argument with Winters started because she refused to put a mask on her and her daughter. At the time, the COVID pandemic was ongoing and the mask mandate was in effect. As a result of refusing to put on a mask and having a verbal altercation with the employee, Winters was asked to leave the store. According to Winters, she was wearing a mask that day but her two-year-old daughter was not because Winters did not think that she was required to wear one.

{¶ 6} Bargo located Winters in the middle of the store. At that time, Winters was not arguing with the employee but was yelling on her phone very loudly about the employee. Bargo advised Winters that she needed to speak with her but that they needed to do it outside the store, because the employee wanted Winters to leave. Winters told Bargo that neither she nor the employee could make her leave until it was closing time or she got her pop.

{¶ 7} Bargo tried to explain to Winters that she would listen to Winters' statements but that they had to get outside the store. Bargo informed Winters that she needed to stop screaming and cursing at the employee, to whomever was on the phone, and at Bargo because Winters was causing a scene and being disorderly. Bargo told Winters

to cease her conduct and that if she did not, then Winters could go to jail for disorderly conduct. Meanwhile, the employee was verbally arguing with Winters about having to leave the store and about the verbal altercation earlier. Bargo explained the exchanges between Winters and the employee as "challenging," involving not direct threats but veiled threats. Bargo repeatedly had to separate Winters and the employee, both of whom were loud and "on the same level of excited," telling the employee to return to the front of the store while trying to get Winters to leave the store. Bargo tried to reason with Winters for approximately seven to eight minutes inside the store.

{¶ 8} Although Winters eventually agreed to leave the store and moved toward the exit, she changed her mind and stopped, refusing to leave. As Winters and Bargo progressed toward the exit, Winters again engaged in a verbal altercation with the employee. After Bargo told the employee to walk away, she turned her attention back to Winters, placed a hand on Winters' left arm, and told Winters it was time to leave and to go outside. Winters told Bargo not to touch her and used profane language directed at Bargo. Bargo testified that things escalated from there.

{¶ 9} According to Bargo, when she and Winters approached the front of the store, instead of turning left to go toward the exit, Winters went straight and advanced toward the employee who was approximately five feet away, but Bargo grabbed Winters' coat to stop her. Winters denied that she made any movement towards the employee, however, she did admit that she was still arguing with the employee during that time and both parties were mad.

{¶ 10} Bargo testified that she attempted to place Winters up against a cart but

Winters actively resisted and argued with Bargo. Bargo also attempted to get Winters to the ground but was unsuccessful. Winters claimed she told Bargo to stop because she was pregnant and, therefore, refused to go to the ground. During the struggle, Winters had her cell phone in her hand, which was thrown to the floor and broken. Eventually, a second unit arrived and the deputies were able to get Winters handcuffed and out of the store. Winters' lip was injured during the detention. In the process of getting Winters out of the store, Bargo's finger got caught in the handcuffs and was injured. Bargo testified that the environment inside the store was very hostile and that although she did not see a drawback of a punch, she saw physical danger cues.

{¶ 11} Once Winters was removed from the store, she was placed in the backseat of Bargo's police cruiser, which was audio- and video-recorded. While in the backseat, Winters spoke with another officer, Sergeant Vitali, who had arrived on scene. When Sgt. Vitali asked Winters why she did not just leave the store when they asked her to, she explained that she was mad and just wanted to tell her story. She admitted that she should have just left the store. Winters admitted at trial that Bargo asked her to leave the store "like twice" and she did not immediately leave the store.

{¶ 12} Upon the close of the State's case-in-chief, Winters made a general Crim.R. 29(A) motion that the trial court overruled. After Winters testified and Bargo provided rebuttal testimony, the trial court found Winters guilty of disorderly conduct, in violation of R.C. 2917.11(A)(3) and (E)(3)(a), a misdemeanor of the fourth degree. The trial court immediately imposed sentence of 30 days in jail, suspended on the condition that no criminal offenses occur for the next two years, plus a $25 fine and court costs. Winters

timely appealed from the trial court's judgment.

{¶ 13} Winters raises the following three assignment of errors:

THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT THE DEFENDANT'S MOTION FOR ACQUITTAL AS THE GUILTY VERDICT AT THE TRIAL COURT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.

THE TRIAL COURT ERRED WHEN IT ENTERED A JUDGMENT AGAINST THE APPELLANT WHEN THE JUDGMENT WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.

APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL TO A DEGREE THAT SHE DID NOT RECEIVE A FAIR TRIAL.

## II. Preliminary Issues

{¶ 14} Winters argues that because she was charged under R.C. 2917.11(A)(3), the State was required to prove that the words she used during the altercation amounted to "fighting words" in order for her conviction to stand. Winters contends there was no evidence to support that she used fighting words. The State, on the other hand, claims that Winters was not specifically charged with the (A)(3) section but with R.C. 2917.11(A) generally, because she was actually charged with R.C. 2917.11(E)(3)(a), meaning that she could be convicted under any subsection of R.C. 2917.11(A). The State did not identify which subsection was proven at trial, only that Winters persisted in her disorderly conduct despite reasonable warnings to stop. The trial court specifically found Winters guilty of disorderly conduct, in violation of R.C. 2917.11(A)(3), in addition to R.C.

2917.11(E)(3)(a).

{¶ 15} Pursuant to R.C. 2917.11(A)(3), a person commits disorderly conduct when the person "recklessly cause[s] inconvenience, annoyance, or alarm to another by doing any of the following: * * * [i]nsulting, taunting, or challenging another, under circumstances in which that conduct is likely to provoke a violent response[.]" Disorderly conduct is a minor misdemeanor. R.C. 2917.11(E)(2). But, if the "offender persists in disorderly conduct after reasonable warning or request to desist," the offense is elevated to a fourth-degree misdemeanor. R.C. 2917.11(E)(3)(a). R.C. 2945.75(A)(1) provides that when the presence of one or more additional elements makes an offense one of more serious degree, the complaint "shall state the degree of the offense which the accused is alleged to have committed, or shall allege such additional element or elements. Otherwise such * * * complaint * * * is effective to charge only the least degree of the offense." The additional elements identified in R.C. 2917.11(E)(3)(a) that increase the degree of offense of disorderly conduct from a minor misdemeanor to a fourth-degree misdemeanor constitute essential elements that are required to be stated in the complaint or identified in the complaint by listing the higher degree level applicable. *See In re S.W.*, 2d Dist. Montgomery No. 24525, 2011-Ohio-5291, ¶ 35 ("the persistence that R.C. 2917.11(E)(3)(a) contemplates is not merely an enhancement factor but an element of the offense of disorderly conduct when persistence is charged."); *State v. Gwen*, 134 Ohio St.3d 284, 2012-Ohio-5046, 982 N.E.2d 626, ¶ 11 (where the existence of an additional fact is required to be proven that affects the degree of the offense and not just the punishment available upon conviction, it is an essential element of the offense).

{¶ 16} Pursuant to Crim.R. 4(A)(3), in misdemeanor cases an officer "may issue a summons in lieu of making an arrest, when issuance of a summons appears reasonably calculated to ensure the defendant's appearance. The officer issuing the summons shall file, or cause to be filed, a complaint describing the offense." "The filing of a valid complaint invokes the jurisdiction of a municipal court." *State v. Daly*, 2d Dist. Montgomery No. 29238, 2022-Ohio-632, ¶ 21, citing *State v. Mbodji*, 129 Ohio St.3d 325, 2011-Ohio-2880, 951 N.E.2d 1025, ¶ 12. A complaint is defined under Crim.R. 3 as a written statement of the essential facts constituting the offense charged that states the numerical designation of the applicable statute or ordinance, and made upon oath before any person authorized by law to administer oaths. Ohio courts have uniformly held that the phrase "essential facts constituting the offense charged" means those facts which the State must prove in order to obtain a conviction, i.e., the essential elements of the crime charged. *State v. Wheeler*, 2d Dist. Montgomery No. 27166, 2017-Ohio-1200, ¶ 7.

{¶ 17} In this case, Winters was not arrested at the time of the offense but was instead issued a summons. A complaint was sworn, signed, dated, and filed with the Vandalia Municipal Court. The complaint states, in pertinent part, that Winters did "cause inconvenience, annoyance, and alarm to another by insulting, taunting, or challenging another, which conduct is likely to provoke a response. To wit: continuing to argue w/employees and attempting to initiate a fight in violation of Section 2917.11A3 of the [Ohio Revised Code]." The complaint does not include any mention of the level of the offense. Nor did the complaint identify subsection (E)(3)(a) or include language that Winters persisted in disorderly conduct after reasonable warning or request to desist. As

a result, Winters could only be convicted of the least degree of offense raised in the complaint, disorderly conduct, a minor misdemeanor. *See State v. Stefanopoulos*, 12th Dist. Butler No. CA2011-10-187, 2012-Ohio-4220, ¶ 37-38 (defendant could only be convicted of minor misdemeanor disorderly conduct where the complaint failed to contain any of the language in R.C. 2917.11(E)(3) to elevate the offense to a fourth-degree misdemeanor).

{¶ 18} Amendments or variances may be made to the form or substance of a complaint, but changes in the name or identity of the crime charged are not permitted. Crim.R. 7(D). An amendment that changes the penalty or degree of the original complaint changes the identity of the offense. *State v. Davis*, 121 Ohio St.3d 239, 2008-Ohio-4537, 903 N.E.2d 609, syllabus. The record is devoid of any mention of an amendment to the complaint, but because elevating the offense to a fourth-degree misdemeanor would change the penalty and degree of the offense, the State could not have amended the complaint to the higher level misdemeanor without changing the identity of the crime charged. Thus, absent an instrument charging Winters with disorderly conduct as a fourth-degree misdemeanor, Winters could only be convicted of the lesser minor misdemeanor offense. *City of Bellbrook v. Czelen*, 2d Dist. Greene No. 89-CA-2, 1989 WL 130811, *3 (Nov. 2, 1989).

{¶ 19} It appears that all parties were under the impression that Winters was charged under R.C. 2917.11(E)(3)(a). The parties apparently relied upon the charge listed on the case file's dust jacket, which was listed as R.C. 2917.11(E)(3)(a). But, "[a] defendant cannot be tried for an elevated degree of a misdemeanor based merely upon

a clerk saying so on a dust jacket." *State v. Boafor*, 7th Dist. Mahoning No. 12 MA 192, 2013-Ohio-4255, ¶ 54.

{¶ 20} Winters did not directly assign as error the erroneous degree of conviction, but because there is a dispute as to what elements the State was required to prove at trial based on the charging document, we will *sua sponte* take notice of the obvious defect that exists in this case pursuant to Crim.R. 52(B). Objections regarding defects in a charging instrument must be raised prior to trial, otherwise, an appellate court reviews such defects under a plain-error analysis. *State v. Horner*, 126 Ohio St.3d 466, 2010-Ohio-3830, 935 N.E.2d 26, syllabus. Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." For a reviewing court to find plain error there must be an error, the error must be an obvious defect in the proceedings, and the error must have affected the outcome of the trial. *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).

{¶ 21} We find plain error here. Winters' conviction for a higher level offense not properly charged, coupled with a sentence that is unauthorized for the offense for which she was in fact charged, resulted in a manifest injustice. According to the complaint, the highest level of offense for which Winters could be convicted was disorderly conduct, a minor misdemeanor. As a result, when considering Winters' assignments of error, we will confine our analysis to the offense for which she was charged, disorderly conduct under R.C. 2917.11(A)(3), a minor misdemeanor.

### III. Sufficiency of the Evidence

{¶ 22} In her first assignment of error, Winters alleges that the trial court erred by

denying her Crim.R. 29(A) motion for acquittal because the verdict was not supported by sufficient evidence. Specifically, Winters contends that evidence of the words Winters was alleged to have made during the incident were not identified and thus cannot constitute "fighting words" to support the trial court's verdict.

{¶ 23} Under Crim.R. 29(A), a trial court may order a judgment of acquittal after the close of evidence on either side if the evidence is not sufficient to sustain a conviction for the charged offense. "When reviewing the denial of a Crim.R. 29(A) motion, an appellate court applies the same standard as is used to review a claim based on the sufficiency of the evidence." (Citations omitted.) *State v. Bailey*, 2d Dist. Montgomery No. 27177, 2017-Ohio-2679, ¶ 17. However, in reviewing the trial court's denial of a Crim.R. 29(A) motion for acquittal made at the end of the State's case-in-chief, we consider only the evidence then available to the trial court. *Id.* at ¶ 17, citing *State v. Sheppeard*, 2d Dist. Clark No. 2012-CA-27, 2013-Ohio-812, ¶ 51.

{¶ 24} A sufficiency of the evidence argument disputes whether the prosecution has presented adequate evidence on each element of the offense to permit the case to go to the jury or to sustain the verdict as a matter of law. *State v. Brock*, 2019-Ohio-3116, 140 N.E.3d 1239, ¶ 16 (2d Dist.). Our role when reviewing the sufficiency of the evidence to support a conviction is to "examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v.*

*Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier-of-fact." *State v. Dennis*, 79 Ohio St. 3d 421, 430, 683 N.E.2d 1096 (1997), citing *Jenks* at 273.

{¶ 25} "Punishment for disorderly conduct based on spoken words is prohibited unless those words amount to 'fighting words.' " *City of Middletown v. Carpenter*, 12th Dist. Butler No. CA2006-01-004, 2006-Ohio-3625, ¶ 14. " 'Fighting' words are those 'which by their very utterance inflict injury or tend to incite an immediate breach of the peace.' " *State v. Phipps*, 58 Ohio St. 2d 271, 278, 389 N.E.2d 1128 (1979) quoting *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). In determining whether one's language amounts to fighting words, "one must look at the circumstances surrounding such utterance." *State v. Presley*, 81 Ohio App.3d 721, 724, 612 N.E.2d 353 (12th Dist.1992).

{¶ 26} A conviction for disorderly conduct under R.C. 2917.11(A)(3) need not be based solely on an individual using "fighting words." Rather, "Ohio courts have interpreted R.C. 2917.11(A)(3) as prohibiting both the offender's use of 'fighting words' and/or conduct likely to 'provoke a violent response.' " *State v. Schils*, 12th Dist. Clermont No. CA2019-08-67, 2020-Ohio-2883, ¶ 19, citing *State v. Miller*, 6th Dist. Lucas No. L-86-281, 1987 WL 7067, *2 (Feb. 27, 1987). "The test [under the disorderly conduct statute] is objective and focuses on whether, under the circumstances, it is probable that a reasonable person would find the accused's language and conduct annoying or alarming and would be provoked to want to respond violently; a person need not actually

be provoked to a violent response." *State v. Blair*, 2d Dist. Montgomery No. 24784, 2012-Ohio-1847, ¶ 9, citing *State v. Sansalone*, 71 Ohio App.3d 284, 285-286, 593 N.E.2d 390 (1st Dist.1991).

{¶ 27} Here, the prosecution's evidence in its case-in-chief was legally sufficient to support a finding that Winters violated R.C. 2917.11(A)(3). Deputy Bargo responded to a call at the Dollar Tree store regarding a disorderly subject who was refusing to leave the store and arguing with employees. Winters was found inside the store being very loud, cussing, and arguing with the employee. She repeatedly refused to leave after being told several times she needed to leave the store, and she also refused to stop arguing with the employee. Both Winters and the employee were very loud and excited during the verbal altercations and repeatedly approached each other to the point that Bargo had to separate them several times. Significantly, Bargo testified that as she and Winters approached the front of the store, Winters was again engaged in a verbal altercation with the employee. Thereafter, instead of turning left to go toward the exit, Winters went straight and advanced toward the employee. Based on Bargo's testimony, although the verbal confrontations between Winters and the employee did not get to the point of a violent altercation, it was only because Bargo was able to detain Winters before she could reach the employee. Winters then proceeded to fight off Bargo in an attempt to prevent Bargo from handcuffing her.

{¶ 28} Furthermore, Winters acknowledged to Sgt. Vitali on the cruiser video recording that Bargo told her more than once to leave the store and admitted that she should have left immediately but did not. She also told Sgt. Vitali that she did not go

outside and tell Bargo what happened because she was so mad at the store employee. She stated that Bargo was being nice and trying to tell her to go outside but the employee kept saying something to her which made her mad and caused her to continue arguing with the employee. She also acknowledged the employee was mad during the incident.

{¶ 29} Considering Bargo's testimony and the statements made by Winters on the cruiser video recording, Winters' conviction was not based solely upon the content of her speech, but also upon her conduct under the circumstances. While the specific words Winters uttered were not all identified, it is clear that she was arguing loudly with the employee, swearing at the employee and at Bargo, and refusing to comply with commands; both the employee and Winters were mad and repeatedly approached each other. Winters and the employee were antagonistic to each other and repeatedly engaged in verbal altercations with each other even after being told to stop, and Bargo had to forcibly detain Winters to prevent a violent physical altercation. Viewing the evidence in a light most favorable to the prosecution, the trier of fact could have found Winters guilty based on the combination of her words and conduct, which were likely to provoke a violent response. Accordingly, we overrule her first assignment of error.

## IV. Manifest Weight of the Evidence

{¶ 30} In her second assignment of error, Winters alleges that her conviction was against the manifest weight of the evidence because the State failed to prove Winters used fighting words in order to support her conviction.

{¶ 31} "To warrant a reversal from a bench trial verdict under the manifest weight of the evidence claim, it must be determined that the trial court clearly lost its way and

created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *State v. Mills*, 2d Dist. Montgomery No. 21233, 2006-Ohio-4010, ¶ 11, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). "When engaged in this limited reweighing, the appellate court may not merely substitute its view for that of the trier of fact[.]" *State v. Thompson*, 10th Dist. Franklin No. 16AP-812, 2017-Ohio-8375, ¶ 25. The weight to be given to the evidence and the credibility of the witnesses is primarily for the trier of fact to decide. *State v. Thomas*, 70 Ohio St.2d 79, 80, 434 N.E.2d 1356 (1992). A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 32} In addition to the evidence addressed in our analysis above for the sufficiency of the evidence, additional evidence was presented that further supported Winters' conviction under the manifest weight standard. Specifically, Bargo described the environment as "very hostile" and she observed "physical danger cues." She described Winters as using profane language directed at both the employee and Bargo and being very loud, and she noted that there were challenges with veiled threats during the encounter.

{¶ 33} While Bargo testified that Winters advanced toward the employee at the front of the store, Winters denied that she made any movement towards the employee. She did admit, however, that she was still arguing with the employee during that time and both parties were mad. It is well-established that, when conflicting evidence is

presented, a conviction is not against the manifest weight of the evidence simply because the trier of fact believed one side's testimony over the other. We "will not substitute [our] judgment for that of the trier of fac[t] on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict." *State v. Smith*, 2d Dist. Montgomery No. 25462, 2013-Ohio-5345, ¶ 16. Considering the hostile and antagonistic environment, the fact that the employee and Winters repeatedly engaged in verbal altercations with each other even after being told to stop, Winters' loud and profane language use, and Winters' advancement toward the employee, it was not unreasonable for the trial court to find that Winters' conduct occurred under circumstances likely to provoke a violent response.

**{¶ 34}** Based upon our review of the combination of Winters' words and conduct, we cannot say that the trial court "lost its way" or created a "manifest miscarriage of justice" when the trial court found Winters guilty. Winters' second assignment of error is overruled.

### V.    Ineffective Assistance of Counsel

**{¶ 35}** In her third assignment of error, Winters claims that she received ineffective assistance of counsel for counsel's failing to file a request for discovery. The State responds that the record does not indicate defense counsel failed to receive all available discovery. According to the State, the prosecutor's office has an open file discovery policy such that both parties use the court's file, which contains all discovery within it.

**{¶ 36}** In order to prevail on an ineffective assistance of counsel claim, Winters must prove that her attorney was ineffective under the test in *Strickland v. Washington*,

466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The two-part test requires the appellant to show, "first, that counsel's performance was deficient and, second, that the deficient performance prejudiced his defense so as to deprive the defendant of a fair trial." *State v. Lott*, 51 Ohio St.3d 160, 174, 555 N.E.2d 293 (1990), citing *Strickland* at 687. In analyzing the first prong of *Strickland*, there is a strong presumption that defense counsel's conduct falls within a wide range of reasonable professional assistance. *Strickland* at 689.

{¶ 37} If the first prong is met, then the defendant must show that the deficient performance prejudiced the defense. *Id.* at 687. To demonstrate prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1998), paragraph one of the syllabus. An ineffective assistance of counsel claim cannot be predicated upon vague speculations of prejudice. *State v. Otte*, 74 Ohio St.3d 555, 566, 660 N.E.2d 711 (1996). The "prejudice must not be presumed, but rather must be affirmatively shown." *State v. Saultz*, 4th Dist. Ross No. 09CA3133, 2011-Ohio-2018, ¶ 21. The failure to prove either prong of the *Strickland* two-part test makes it unnecessary for a court to consider the other prong. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000), citing *Strickland* at 697.

{¶ 38} Crim.R. 16 governs the discovery process in criminal cases and provides that if an accused demands discovery from the State, the accused owes a reciprocal duty of disclosure. *State v. Athon*, 136 Ohio St.3d 43, 2013-Ohio-1956, 989 N.E.2d 1006, ¶ 2. The Rule also requires that parties have a continuing duty to supplement their

disclosures. Crim.R. 16(A). There is no absolute requirement that a defendant must file a discovery request and the failure to file one does not automatically demonstrate a deficiency. Generally, whether or not to submit a request for discovery falls within the category of trial tactics, which normally do not form the basis of ineffective assistance of counsel. *State v. Rollison*, 2017-Ohio-8936, 101 N.E.3d 584, ¶ 15 (3d Dist.), citing *State v. Whittsette*, 8th Dist. Cuyahoga No. 85478, 2005-Ohio-4824, ¶ 35. However, even if we were to assume defense counsel's decision to forego filing a request for discovery was deficient, we do not see that such failure affected the outcome of the trial. Winters provides no explanation as to how the outcome of her case would have been any different but for her counsel failing to file a discovery request.

{¶ 39} Although the State alleges that the Vandalia Municipal Court Prosecutor's Office has an open file discovery policy, there is no record of such a policy available to this Court. However, the record suggests that defense counsel was fully informed of the evidence against Winters and was prepared for trial. Defense counsel filed a praecipe and summons for the State's only witness, Deputy Bargo, to attend both a pretrial and the trial on defendant's behalf. Bargo was ordered to bring with her to the pretrial "any cruiser cam, audio recordings, digital images taken by Sgt. Vitali; action response report." Notably, defense counsel's subpoena duces tecum specifically requested Sgt. Vitali's photographs, which defense counsel presumably would have learned through discovery, particularly since neither Sgt. Vitali nor his photographs were mentioned in the filed complaint. Defense counsel likewise filed a praecipe and summons for Doneva Battigaglia for trial who was identified in the case file as one of the store clerks, but was

not identified in the complaint.

{¶ 40} A review of the docket and a copy of the transcript demonstrate that neither party brought to the trial court's attention that discovery was not satisfied. Defense counsel did not appear surprised by any of the testimony or single piece of evidence the State produced at trial. On the contrary, defense counsel seemed familiar with the case and appropriately cross-examined the State's only witness. Counsel also reasonably presented Winters' testimony as a defense.

{¶ 41} Based on our review of the record, under these circumstances, Winters has failed to establish that the failure of her counsel to request discovery has resulted in actual prejudice or that filing a request for discovery would have changed the outcome of the case. The third assignment of error is overruled.

## VI. Sentencing

{¶ 42} Having modified and affirmed Winters' conviction to a minor misdemeanor offense, we must address her sentence. In addition to imposing court costs for a minor misdemeanor offense, a trial court may sentence an offender to any financial sanction or combination of financial sanctions that does not exceed 150 dollars. R.C. 2929.28(A)(2)(v). In lieu of all or part of a fine, the trial court could impose a term of community service not to exceed 30 hours. R.C. 2929.27(D). However, there is no legislative authorization for the imposition of a jail term or community control sanctions for a minor misdemeanor. R.C. 2901.02(G)(2).

{¶ 43} Because Winters' conviction is modified to a minor misdemeanor, her sentence for 30 days suspended jail time cannot be imposed and must be vacated. The

imposition of the $25 fine and court costs by the trial court fall within the applicable guidelines for sentencing for a minor misdemeanor conviction and will therefore remain undisturbed.

### VII.    Conclusion

{¶ 44} In sum, we conclude that the complaint only charged disorderly conduct as a minor misdemeanor offense and, therefore, Winters could only be convicted of the lesser degree offense, rather than a fourth-degree misdemeanor.   Because there was sufficient evidence to support a conviction for a minor misdemeanor disorderly conduct charge and that conviction was not against the manifest weight of the evidence, we modify Winters' conviction for disorderly conduct to a conviction for a minor misdemeanor disorderly conduct.   The 30-day suspended jail sentence is vacated but the judgment of the trial court is affirmed in all other respects, as modified.

{¶ 45} The judgment of the trial court is vacated in part and affirmed as modified.

. . . . . . . . . . . . .

TUCKER, P.J. and WELBAUM, J., concur.

Copies sent to:

Erik R. Blaine
James S. Sweeney
Hon. Cynthia M. Heck